JAQUES and OTHERS, assignees of Bussing, an insolvent debtor, *against* MARQUAND.

ASSUMPSIT ; tried at the *New-York* circuit, *February* 5th and 6th, 1824, before EDWARDS, C. Judge.

An insolvent debtor, who has released all claim to a surplus, is a competent witness for his assignees.

A partner, who holds money in his individual right, in trust for another cannot subject the firm to an action for the money, by applying it to the use of the firm, without the knowledge or privity of the other member or members of his firm. Otherwise, where it is applied with their knowledge or privity.

Where a partner borrows money on his individual credit, and afterwards applies it to the payment of partnership debts, or lends it to the firm, this does not make the original lender a creditor of the firm.

But where a partner borrows money generally, without saying for whom, the fact of its being used in the business of the partnership, is, *prima facie*, evidence to sustain an action against the firm.

An insolvent discharge, under the act of 1813, is constitutional as to debts contracted after the act.

ALBANY,
Oct 18.6.

Jaques
v.
Marquand.

The declaration contained the common money counts only, laying a promise by the defendant to *Bussing*, the insolvent ; and also to his assignees, under the act for giving relief in cases of insolvency.

Plea in abatement, that the promises laid, if any, were made by the defendant and one *Cornelius Paulding*, jointly, &c. and issue.

The plaintiffs, at the trial, offered *Bussing* as a witness, who had released all his interest in his estate assigned.

The defendant objected, that the plaintiffs were first bound to prove the assignment, before they could proceed. This objection was overruled, on the ground that the plea admitted the assignment. The defendant then objected to the competency of *Bussing*, on the ground that his discharge, which was under the act of 1813, was void by the constitution of the United States ; and he is still liable, therefore, to pay his debts. He stated on his *voire dire,* that all the debts which he owed, had been contracted since the passage of the act under which he was discharged ; and the judge admitted him to testify.

The plaintiff then produced an instrument in writing, dated *December* 20*th*, 1816, signed by the defendant alone, certifying that on the 12*th* of *April*, 1814, one *Crump*, on the recommendation, and through the agency of the defendant, borrowed and received of *Bussing*, 200 shares of the capital stock of the *New-York Manufacturing Company,* which the defendant engaged to have returned and reconveyed to *Bussing*, within 30 days from the time of the loan ; that default having been made in the return and reconveyance, *Crump*, at or about the expiration of the 30 days, placed in the defendant's hands sufficient property to indemnify *Bussing*, the proceeds of which, the defendant was to have applied to that object ; but that he had converted the property into cash, and appropriated the proceeds to the use and business of the firm of *Marquand* and *Paulding*. That there was, at the date, due to *Bussing* on the account aforesaid, $7763,89. (Signed,) *Isaac Marquand.*

*Bussing* swore that this certificate was given to him by the defendant, and signed by his own proper hand and name.

The defendant then moved for a nonsuit, on the ground that the certificate was no evidence of money for the sole use of *Bussing*, or his assignees. The judge overruled the motion.

The parties then went into further evidence, upon the question, whether the transaction out of which the above certificate arose, was one of *Marquand* and *Paulding*, the latter of whom was the *Cornelius Paulding* mentioned in the plea ; or whether it was an individual concern of the defendant. This evidence is sufficiently stated in the opinion of the court.

*Bussing* had, by mistake, as he swore, in his proceedings to obtain his discharge, inventoried the debt in question as due from the firm of *Marquand* and *Paulding*.

The judge charged the jury, that notwithstanding the debt being so inventoried, still, if it was in fact due from the defendaut alone, the plaintiffs were entitled to recover ; and that even if the proceeds of the property in question were originally received by *Marquand* and *Paulding*, and applied to their use, still if the property was assigned for the satisfaction of *Bussing's* claim against *Marquand*, the plaintiffs were entitled to recover from *Marquand* solely.

The defendant excepted to this charge, and the jury found for the plaintiffs, $11,656,76.

The parties made a case, agreeing that it might be turned by either, into a special verdict, or bill of exceptions, so far as respects the exceptions to the opinions and charge of the judge.

A motion was now made for a new trial, on behalf of the defendant on three grounds ; 1. That *Bussing* was not a competent witness ; 2. That the defendant never was individually responsible ; but that *Marquand* and *Paulding* were liable ; 3. That the charge of the judge was incorrect.

*H. D.* and *R. Sedgwick* for the motion, cited 15 *Mass. Rep.* 75, 331.

*G. Griffin*, contra, cited 1 *Mont. on Partn.* 198, 9. *Gow on Partn.* 344, 348.

ALBANY,
Oct. 18.6.

Jaques
v.
Marquand.

*Curia,* per SUTHERLAND, J. *Bussing* was a competent witness. He was discharged from all his debts on the 30*th* of *September,* 1822, under the act of 1813 ; and it appeared that all the debts, which he owed at the time of his discharge, had been contracted since the passage of that act. According to the repeated decisions of this court, that discharge was valid, not only as to the person of the insolvent, but as to his future acquisitions. Those decisions, it is true, have been questioned, and cases are now understood to be pending in the supreme court of the United States, in which the unconstitutionality of the whole series of our insolvent laws is broadly maintained. What the decision of that court will be, it is not for us to anticipate ; but until its judgment is pronounced, we are not only authorized, but bound to presume that it will be in accordance with our own.

*Bussing* released to the plaintiffs all his interest in the surplus of the property assigned, &c. He was properly admitted as a witness.

The instrument of *December* 20*th*, 1816, signed by the defendant, contained sufficient evidence of money had and received by him *solely,* to the use of the plaintiffs, to entitle them to recover. He acknowledged by that instrument, that *Crump* placed in his hands sufficient property for the indemnification of *Bussing,* which he was to have applied to that object. But that, instead of this, he converted the property into cash, and appropriated the proceeds to the use and business of the firm of *Marquand* and *Paulding.* He also admits, by that instrument, that there is now due to *Bussing* the sum of $7763,89.

The firm of *Marquand* and *Paulding* had two houses ; one at *New-York,* where *Marquand* resided, and carried on business ; the other at *New-Orleans,* under the direction of *Paulding,* who resided there. *Paulding* had no knowledge of any part of the transaction in question. It originated as follows : *Reuben Crump,* of the firm of *Kelso* and *Crump,* on the 12*th* of *April,* 1814, borrowed of *Bussing,* upon the reccommendation, and through the agency of the defendant, 200 shares of the capital stock

of the *New-York Manufacturing Company. Crump* gave the following note, for the 200 shares : " Within 30 days from date, I promise to transfer to Mr. *Isaac Marquand,* or order, two hundred shares of *N. York Manufacturing Company* stock, for the same number transferred to me by Mr. *Abm. Bussing.*                       *Reuben Crump.*

*New-York,* 12th *April,* 1814."

Endorsed thus : "Transfer the within shares to Mr. *Abm. Bussing.*                       *Isaac Marquand.*"

*Crump* having failed to pay this note, at or about the time when it fell due, gave *Marquand* an order for a quantity of cotton, sufficient to pay it. He acknowledges that he received it for that purpose, realized the money, and applied it to the use and business of the firm of *Marquand* and *Paulding.* The order for the cotton was in favor of *Marquand* and *Paulding.* It was sent to auction in their names, sold on their account, and the proceeds applied to their benefit. But it was all done by *Marquand,* and under his exclusive direction ; *Paulding* being in *New-Orleans,* and knowing nothing of the transaction. The question is, whether *Marquand* is individually responsible for the amount, which he acknowledges has been received for the benefit of *Bussing ;* or whether the action should have been brought against the firm of *Marquand* and *Paulding.*

There can be no doubt, that in the origin of this transaction, when *Marquand* became security to *Bussing* for the return of the stock borrowed by *Crump,* he acted in his individual capacity, and not on behalf of the firm. *Crump's* note was payable to him individually ; and by him individually endorsed or transferred to *Bussing.* If an action could have been sustained at all upon this guaranty, it must undoubtedly have been brought against *Marquand* individually, and not against the firm. *Crump* testifies that when he received the transfer of the stock from *Bussing,* the defendant alone became security for the retransfer of it ; and that the giving of such security, was the individual transaction of the defendant. *Bussing* also testified that he considered the transaction as with *Marquand,* the defendant, and not with *Marquand* and *Paulding.*

Every presumption, therefore, is in favor of the suppo-
sition that the cotton which *Crump* delivered to *Mar-
quand* in trust for *Bussing*, and by way of indemnity
against his guaranty of the delivery of the stock, was de-
livered to him in the same character in which his respon-
sibility was incurred. It must be borne in mind, that the
order for the cotton, though in favor of the firm of *Mar-
quand* and *Paulding*, was, in fact, delivered to *Marquand*,
who was the sole partner in *New-York*. *Marquand*
alone directed it to be sold, and he alone, in fact, received
the proceeds. If he applied them to the purposes of the
firm, which he seems to have done, it was without the
knowledge or privity of his co-partner. It is, then, the
case of one partner being a trustee, bringing trust money
into the firm, without a knowledge or privity on the part
of his co-partner, of its being trust money; and it has
been repeatedly held, in such cases, that it does not cre-
ate a joint debt on the part of the firm, which can be prov-
ed against their joint estate. For, although the partner
abuses his trust, and advances the money to the partner-
ship, it will not raise a contract between the firm and the
*cestui que trust*, nor convert the innocent partners into
implied trustees. In *Ex parte Apsey*, (3 *Bro. Ch. Cas.*
265,) the case was this : *Edward Allen*, of the firm of
*Edward* and *James Allen*, was assignee, together with the
petitioner, *Apsey*, under a commission of bankruptcy, is-
sued against one *William Tory*. As such assignee, he
received between 4 and 500 hundred pounds, belonging
to the estate, and applied it in discharging the debts, and
in other purposes of the firm. The *Allens* afterwards be-
came bankrupts, and *Apsey*, the co-assignee of *Edward
Allen*, petitioned the chancellor, (on appeal from the de-
cision of the commissioners,) for leave to prove the sum
received by his co-assignee, and applied to the payment of
the partnership debts, under the joint commission against
the partnership. But lord chancellor *Thurlow* refused
the petition ; and remarked : " here one, by abusing his
trust, advances trust money to the partnership ; that will
not raise a contract between the partnership, and the per-

son whose money it is." But where the application of the trust money to the purposes of the firm, is made with the knowledge and privity of the other partners, they are all jointly liable. (*Smith* v. *Jameson*, 5 *T. R.* 601. *Boardman* v. *Mosman*, 1 *Bro. Ch. Cas.* 68. *Ex parte Clowes*, 2 *id.* 595. *Ex parte Watson*, 2 *Ves. & Bea.* 414. 3 *Bro. Ch. Cas.* 112.)

Where one partner borrows money on his individual credit, and afterwards applies it to the payment of partnership debts, or loans it to the firm, it does not entitle the original lender to consider himself a creditor of the firm, and to enforce payment against them. (*Ex parte Hunter* 1 *Atk.* 223. *Parkin* v. *Carruthers*, 3 *Esp. Rep.* 250, *per Le Blanc, J.*)

Where one of a firm borrows money, the fact of its being used in the business of the partnership, is, *prima facie*, evidence that the debt is joint, where no express separate contract was made with the individual partner. (8 *Ves.* 540. *Gow on Partn.* 343 to 349.)

I do not consider this case as at all varied by the circumstance, that the order for the cotton was drawn by *Crump* in favor of the firm, instead of *Marquand* alone. The consideration for the order, the whole transaction out of which it grew, was an individual one, on the part of *Marquand*, in which he did not profess, and, indeed, had no authority to act for the firm : and it is worthy of remark, that it is *Marquand* himself, who denies his individual responsibility ; and not the partnership, seeking to get rid of a claim which might, with some plausibility, have been preferred against them.

The application of the cases cited by the defendant's counsel, from 15 *Mass. Rep.* 75 and 331, is not perceived. In those cases the question was, whether *Gore* was liable as one of the firm of *Gore* and *Grafton*, in an action for money had and received under the following circumstances : They were general partners ; and *Grafton* made a note in the partnership name, payable to *Thomas Cushing*, or order ; and forged the endorsement of *Cushing*, and raised money upon it. The endorsee brought an ac-

tion on the note, the declaration also containing the general counts. The court held that he was entitled to recover under the general counts, though there was no evidence that the money was actually applied to the purposes of the firm; because *Grafton* had an authority to raise money upon the credit of the house. *Gore* had reposed that confidence in him, and ought to suffer the consequences.

The exceptions to the charge of the judge are not well taken; and the motion for a new trial must be denied.

New trial denied.