Buckner *vs.* Lee *et al.*

---

No. 47.—HENRY M. BUCKNER, plaintiff in error, *vs.* WILLIAM H. LEE, *et al.* defendants.

[1.] Upon an agreement between A and B, that A should take certain negroes of B, and work them in a blacksmith's shop, furnish all supplies, pay all expenses, and give B one-half of the net proceeds of the shop, for the use of the negroes: *Held*, that as to third persons, A and B are partners.

[2.] If the business of a firm is conducted by one of the partners, and his name is the name of the firm, and a note is made by that partner in his name, the firm will be liable thereon, if it is proven that the note was made as a note binding the firm, or that the consideration of the note was for the benefit, and in the course of the business of the firm, and that the payee be-

8    285
f 117  761
e117  762
e117  763
e117  765
f 117 766

8    285
f128   508

lieved these things, and the maker sanctioned his belief by his acts and representations.

[3.] If money is borrowed, or a purchase made by an individual member of a partnership, and his note is given therefor, it is, *prima facie*, the debt of the individual; but the holder, in an action against the firm, for the consideration of the note, may rebut this presumption by proof; and if it appear that the credit was given to the firm, and not the individual, if the money or the property went to the use, and in the course of the business of the firm, it will be liable. If, however, the credit was given to the individual, the firm will not be liable, although the money or property went to the use and in the course of the business of the firm. In that case it will be held an advance by the individual member to the firm, and he will become the creditor of the firm.

Assumpsit, in Houston. Decision by Judge STARK, at October Adjourned Term, 1849—January, 1850.

Henry M. Buckner brought this suit, on a note for $282, (signed by William H. Lee, alone,) against James A. Everitt and William H. Lee, charging them as partners.

It appeared that Lee was a blacksmith, and he and Everitt agreed, that Everitt was to put in with Lee, some negroes to work with him in his shop; that Lee was to "furnish all supplies, pay all expenses, and give Everitt one-half the net proceeds, for the use of the negroes." It did not appear that Everitt furnished any tools or materials, or of his having paid, or agreed to pay, any of the expenses. On a settlement between the parties, Lee reserved money to pay the debts due by the concern. Lee gave his notes for the wood work of wagons, which were *ironed* in the shop, and sold by him; that Lee said he and Everitt were in the blacksmith business together, and *ironing wagons*. Some patrons (or one) paid accounts to both Everitt and Lee. One witness saying, he "never heard it called any other than Everitt & Lee's shop."

The plaintiff, after making above proof, and introducing the note, closed. Defendants moved a non-suit, on the ground that there was no sufficient case made to carry it to the Jury; that Everitt's estate was not liable, (Everitt had died and his representative been made a party.) The Court sustained the motion— to which plaintiff excepted, and brings up the case on that ground alone.

A. P. Powers, for plaintiff in error, cited—

*Bissett on Partn.* 442.   16 *Wend.* 505.   17 *Sergt. & R.* 2.   2 *H. Bl.* 235.   *Collyer on Partn.* 43.   2 *W. Bl.* 99, 999.   *Smith's Lead. Cases,* 614, 615.   18 *Ves.* 301.

Hunter, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

The presiding Judge non-suited the plaintiff, upon the ground that there was not evidence adduced, in support of his action, sufficient to carry it to the Jury.

[1.] The action was brought to recover a sum of money, alleged to be due by Lee and Everitt, as partners in the blacksmith's business. In support of his action, the plaintiff proved, that Everitt and Lee entered into an agreement, by virtue of which, Lee was to take Everitt's negroes, work them in the shop, furnish all supplies, pay all expenses, and give Everitt one-half of the net proceeds of the shop, for the use of the negroes; that the business was conducted by Lee; that the shop was understood to be the shop of Everitt & Lee; that a part of the business conducted by them was, *ironing wagons* for sale. A note made by Lee, and payable to the plaintiff, which was proven to have been given for the wood work of wagons, was in evidence. There was, also, evidence going to show, that at the time this note was given, Lee, the maker, represented to the plaintiff, that himself and Everitt were conducting the smith's business together, and that a part of their business was the *ironing of wagons.* With this proof the Court non-suited the plaintiff. The bill does not show upon what legal principle the non-suit was awarded. It is claimed, before this Court, that it was rightfully awarded, upon two grounds—

1. Because these parties were not proven to be partners.

2. Because, if partners, it was incompetent for Lee to bind the firm, by giving his own note, unless by express authority from his partner. No such authority being shown, it is argued that the Court was compelled to non-suit the plaintiff. Overruling, as we do, the judgment of the Court, I find it impossible to sustain

our judgment, without, at the same time, overruling the above propositions of counsel.   Their discussion, briefly, therefore, becomes indispensable.   And first, whether, according to law, by the proof, these parties are partners?   Whether, *inter se,* they were partners, is not the question.   It may be conceded, for the sake of the argument, that they were not.   The inquiry is, whether, as to third persons, they were partners, and liable for the debts of the concern, as such?   A *community* of property, and *an agreement* to share in the losses and profits of a business, or *community* of losses and profits, alone, will make the parties partners.   But there may be a partnership without such community and agreement.   There may be a partnership where there is no community of property—no agreement to share in the losses and profits, and no community of losses—that is to say, an agreement that one of the parties shall receive a proportion of the net profits of the concern, for money advanced for its use, or property furnished for its use, (as here,) will constitute a legal partnership, as to third persons.   I do not mean to say, that in all cases, a person will be a responsible partner, who receives a part of the profits of a business.   There are cases where such a person will not be.   Thus, a party may, by agreement, receive by way of rent, a portion of the profits of a farm or tavern, without becoming a partner.   *Prince vs. Hankinson,* 6 *Halst.* 181.   3 *Kent,* 34. So, to allow a clerk or agent a portion of the profits of sales, as a compensation for labor, or a factor a per centage on the amount of sales, does not make the agent or factor a partner, where it is intended merely as a mode of payment, and when not understood as an interest in the profits, *as profits.*   3 *Kent,* 34, *and note.*   So, also, one who lends money to a firm, and is to receive therefor a fixed interest, or an annuity, certain as to amount and duration, will not thereby become a partner, as to third persons; because there is no mutuality of profit with the firm, and no general participation in its casual and indefinite profits.   *Story on Partnership,* §66.   *Collier on Part. b.* 1, *ch.* 1, §1, *p.* 26, 2 *edit.*

"The true distinction, (says Mr. *Story,*) by which we are to distinguish cases of this kind, from cases in which there is a partnership, as to third persons, is to ascertain whether the retiring partner, lender or annuitant is to receive a share of the profits, *as profits;* or whether the profits are relied on only as a fund of payment; or, in other words, whether the profit, or premium, or

annuity, is certain and defined, or is casual, indefinite and depending on the accidents of trade.   In the former case, it is a loan—in the latter, a partnership." *Story on Part.* §67.   *Grace vs. Smith,* 2 *W. Black. R.* 998, 1000.   *Waugh vs. Caurs,* 2 *H. Black. R.* 235 *to* 247.   And again, " in short, in all cases of this kind, the real question to be solved is, whether the party is, in effect, to participate in the rise or fall of the profits, as such, or whether he only looks to the profits as a fund for payment of the annuity, but not exclusively to that fund.   In the former case, he is a partner—in the latter, he is not." *Story on Part.* §69.   " The test of partnership is a community of profit—a specific interest in the profits, *as profits,* in contradistinction to a stipulated portion of the profits, as a compensation."   3 *Kent,* 25.   To which I add, in contradistinction, also, to a stipulated portion of the profits, as an annuity ; that is, an annual sum for the use of money, or of negroes, or other property.   It seems, then, clear, that if one is to receive a certain proportion of the profits, as one-third or one-half, *as profits,* he is a partner.   If *a certain sum* is agreed to be paid out of profits, and the party does not look to that alone for payment, he is not a partner ; but if the *sum to be paid* is not fixed, but may be increased or diminished by the amount or accidents of the business, then the receiver is a partner.   *Story on Partnership,* §§68, 67, 69, 70.   *Collyer on Part.* 28, 2 *edit.*   2 *W. Black.* 998.   2 *H. Black. R.* 235.   *Loomis vs. Marshall,* 12 *Conn. R.* 69.   *Champion vs. Bostwick,* 18 *Wend.* 175.   *Vandenburg vs. Hull,* 20 *Ib.* 70.   17 *Vesey;* 204.   1 *Rose. R.* 91.   *Carey on Partnership,* 11, *n.* 1.   1 *Hill,* 526.   1 *Iredell,* 199.   38 *Eng. C. Law Reps.* 495.

Now, in this case, the proof is, that for the use of his negroes, Everitt was to receive, not a stipulated sum, *but one-half the net proceeds of the shop.*   The amount he was to get, was to be paid out of the profits, *as profits ;* and the amount depended upon the business—its amount, management and accidents.   It would fluctuate according to the amount of the whole net profits—it was one-half, after expenses were paid.   There was clearly community—mutuality, as to the profits ; he looked to no other source for his hire ; he was entitled to an account against Lee, for his interest in the concern.   Upon the proof, as to the partnership, we are clear that the cause ought to have gone to the Jury.

[2.] There is no controversy about the general proposition, that

in both general and limited partnerships, each partner has author-
ity to bind the firm, as to all things within the scope of the part-
nership, but not beyond it.   When the firm is in the use of a
name which imports a partnership, all contracts made in that
name are, *prima facie*, obligatory upon all the members, unless
they are *ultra* the business of the firm; and the onus, in such
cases, lies upon the firm, if they would escape from their obliga-
tions, to prove that the credit was not given to the firm, or that
the contracts are in fraud of its rights.   It is also true, that when
a contract is made by one member of a firm, as a note, in his own
name, and it is apparent, on the face of it, that it is intended to
bind the firm, it also is, *prima facie*, obligatory on it.   But if a
contract, as a note, is made by a member of a firm, in his indivi-
dual name, and it is not apparent, on the face of it, that it is in-
tended to bind the firm, then the presumptions are the other
way—it is, *prima facie*, the note of the individual—the presump-
tion is, that the credit was given to him, and the burthen lies
upon the holder, to prove that it is the debt of the firm.   Hence,
it is true, that the note of one member of a firm does not, *prima
facie*, bind the firm.   These principles are subject to some modi-
fication, which will appear in the application of some of them to
this case.   A distinction is to be taken between the liability of a
firm, on the note of one member, and its liability on the consider-
ation of the note.   Generally, on the note itself, without other
evidence, the firm is not liable.   There is a case, however, in
which the firm will be liable on the note itself, and that is where
the firm name is the name of one of its members.   In such case,
the note may be the note of the firm, or it may be the note of the
individual.   Upon the face of the paper it stands indifferent.   The
burthen of proof lies upon the plaintiff, in an action on the note.
The case of *The United States Bank vs. Binney et al.* decided by
Judge *Story*, on the circuit, is a leading case on this head, and is
like this case in its material points.   The action was brought
there, to recover against the defendants, as partners of John
Winship, upon an indorsement by John Winship.   The defend-
ants were proven to be partners of Winship in business.   The
management of the business was in the hands of John Winship—
they had published no firm name.   The plaintiff charged, that
the defendants were partners, under the name of John Winship.
Judge *Story* said, "The notes are all indorsed in the name of

John Winship. For aught, therefore, that appears on the face of them, they were notes only binding him personally. The plaintiffs, then, must go farther, and show, either expressly or by implication, that these notes were offered by Winship, as notes binding the firm, and not merely him personally, or that the discounts were made for the benefit, and in the course of the business of the firm. It is not sufficient to show that the bank, in discounting these notes, acted upon the belief that they bound the firm, and were for the benefit and business of the firm. They must go farther, and prove that that belief was known to and sanctioned by Winship, himself, in offering the notes, and that he intentionally held out to them, that the discounts were for the credit, and on the account of the' firm, and to bind them, and that the bank discounted the notes on the faith of such acts and representations of Winship." And he sent the case to the Jury, to find the facts, upon these instructions, as to the law. *5 Mason's R.* 189. In the case before me, the plaintiff goes against the defendants, both on the note and the consideration. Here, Everitt was in partnership with Lee, as we have seen. Lee managed the business, and the note was given by Lee. The parties promulged no firm name. How much alike are the two cases! Now, let us see how far the proof brings the case under the rules laid down by *Story.*

The substance of the requirement made by Judge *Story*, of the plaintiffs, was, that they must prove that the notes were offered by Winship, as *notes binding the firm ;* or that the discounts were made *for the benefit and in the course of the business of the firm ;* that the plaintiffs must not only *believe* this, but that Winship did, by his acts and representations, sanction this belief, and that they discounted the notes on the faith of such acts and representations. Well, it is proven in this case, that it was known to the plaintiff, that Everitt and Lee were engaged together in the business of blacksmithing, and that *ironing wagons* was a part of their business. These things were represented to him by Lee, when he gave the note, and it was given for the wood work of wagons. Whether this testimony would fully make out the case, I do not determine ; but that it does go, in part, to comply with the requisitions made by Judge *Story*, there is no doubt. The purchase was made, and the note given in the business, and on account of the firm. The plaintiff had a right to believe—to infer, at least—

that the transaction was a firm transaction, and the Jury might draw the inference, that the acts and representations of Lee sanctioned that belief; and there being *some evidence* to sustain the action on the note, as the note of the firm, the case ought to have gone to the Jury. See, also, a very interesting case growing out of the same partnership—*Etheridge vs. Binney*, 9 *Pick.* 274. *Story on Partnership, p.* 217, *n.* 1. 5 *Mason's R.* 177 *to* 189. *Miflin vs. Smith and another,* 17 *Serg. & Rawle,* 165.

If, however, this view of this case be unsatisfactory, there are other principles of the Law of Partnership which apply to it, and upon which it ought to be sustained.

[3.] I concede, that upon the face of this paper, we infer that no one is bound but Lee, the maker. The presumption which the law deduces from it is, that it is his personal affair, and that the plaintiff gave credit to him alone for the wagons. But this presumption may be rebutted, in an action for the price of these wagons, against the firm ; and the rule unquestionably is, that notwithstanding the note of the individual partner was given—if the purchase was, in fact, made for the partnership business—if these wagons were applied to the uses of the firm, as stock, and became an element in the partnership resources—it is bound for the price. This is the rule, where money is borrowed by one on his own contract. The rule is the same where a purchase of property is made ; and it is a reasonable rule, for if the firm gets the benefit of the money or property, *ex equo et bono,* it ought to be bound. " And (says Mr. *Story,* speaking on this head,) it must be resolved by taking into consideration the whole circumstances of the case. Thus, if the money is, in fact, borrowed for the partnership business, or if it is, in fact, applied to the partnership business, in the absence of all controlling circumstances, the partnership will be bound therefor, since the fair presumption is, that it was intended, by the partner, to pledge the partnership credit, and not merely his individual credit, whether the partnership was known or unknown to the lender." *Story on Partnership,* §139. A distinction, however, obtains just here. If the money is lent *on the credit of the individual member* of a firm known to exist, although it be actually used and applied to the partnership purposes, yet the firm will not be bound—it will be considered as an advance by the individual, for the benefit of the firm, and he will become the creditor of the firm. So, that the

Buckner *vs.* Lee *et al.*

question to be resolved is this, to wit: to whom was the credit given? If I am right in my recollection of the plaintiff's declaration, it is so framed, as to admit proof of liability for the consideration of this note—it goes, also, upon that. I have not the record before me, and am not quite certain. There was some proof in this case, that the wagons were sold on the credit of the partnership; whether much or little, if any, the case ought to have been sent to the Jury. See *Story on Partnership*, §139. *Collyer on Partnership, pp.* 276, 277, 275.   9 *Pick.* 272.   17 *S. & R.* 165.   5 *Mason,* 176.   *S. C.* 5 *Peters' R.* 529.   5 *Watts,* 454.   8 *Metclf.* 411, 420.   9 *Ib.* 454.   21 *Wend.* 365.   9 *Verm.* 252.   6 *Cow.* 497.   5 *Wend.* 223.   16 *Ib.* 505.   3 *Humph.* 209.   4 *Ib.* 346.   5 *Ib.* 499.   1 *Am. Lead. Cas.* 295, '6, '7, '8.

Let the judgment of the Court below be reversed.