### ARTHUR MAXWELL *vs.* THOMAS R. McGEE.

Gold and silver coin collected by an attorney at law, on a claim due his client, cannot be attached in the ordinary way, in his hands, as the property of the client, since the obligation of the attorney to pay it over is but a chose in action, and the specific coin has not vested in the principal.

THIS case was submitted to the court of common pleas, upon an agreed statement of facts.    *Bishop,* J. having rendered judgment for the defendant, the plaintiff appealed to this court.    The agreed statement was in these words :

This is an action of tort to recover the value of certain gold and silver coin amounting to $260.40, alleged to be the property of the plaintiff, and to have been converted to his own use by the defendant.    The answer denies the property of the plaintiff in said coin.    It further alleges that the defendant, at the time of the conversion, was a deputy-sheriff for said county; that he held, as such, a writ in favor of Stephen Shepardson and others against one Benjamin K. Peck; that he attached said coin on said writ as the property of said Peck; that the coin was the property of said Peck, and denies the conversion, otherwise than as aforesaid.

Mrs. Emily Peck, wife of Benjamin K. Peck, in April or May, 1849, being at the time very ill, and having in her pos-

12 *

session a little more than $500, the earnings of her own labor lent $500 to Thomas R. McGee, the defendant. She had with her, her two daughters, Emily and Elizabeth, both under age, and she took of McGee, as security for the money so lent, two negotiable notes, for $250 each, one payable to her daughter Emily Peck, and one payable to her daughter Elizabeth Peck. These notes she gave into the possession of one Stephen Shepardson, for the use of her said daughters, and subsequently said Shepardson gave to each daughter the note running to her. A few days after lending this money, Mrs. Peck died. Benjamin K. Peck was at this time, and for some years afterwards, absent from the state, and gave no consent to, and had no knowledge of the disposition made of this money by his wife. Emily Peck is still living. Elizabeth Peck died in the winter of 1851–2, being still under age, and leaving a will, in which she undertook to give all her property, being the note aforesaid, to certain religious purposes, and naming one Gilbert S. Hays, as executor. Hays offered the will for probate, which was refused. No administration on the estate of said Elizabeth has ever been taken out. In May, 1852, after probate of said will was refused, the said Benjamin K. Peck and the said Hays, went together to the office of the plaintiff, who is an attorney at law, the said Hays having in his possession, and taking with him, the said note running to Elizabeth Peck. Hays handed the note to the plaintiff. Peck took the note, looked at it, and then handed it back to the plaintiff. Hays, at the same time, handed to the plaintiff several accounts against Peck, directing Maxwell to pay them out of the proceeds of said note when collected. To this Peck assented, and Maxwell said he would pay them when he had collected the note. The accounts were as follows :

One in favor of Calvin Alexander   .   .   .   $73.00
One in favor of S. O. Lamb   .   .   .   1.50
One in favor of Gilbert S. Hays   .   .   7 or 8.00

The plaintiff Maxwell also had an account of five dollars against said Hays for professional services, in the attempt to obtain probate of the will of Elizabeth Peck; which Hays

directed him (Maxwell) to pay out of the proceeds of said note, and to this Peck assented    The note was left with Maxwell for collection.   On May 14, 1852, Maxwell wrote to the defendant, informing him that he had in his hands for collection a note against him, the defendant, belonging to Benjamin K. Peck, and demanding payment.   On May 17, 1852, the defendant, being then a deputy-sheriff of said county of Franklin, and having in his hands a writ in favor of Stephen Shepardson and against said Peck, with directions to attach the personal property of Peck to the value of $600, called at the office of the plaintiff, and paid the said sum of $260.40, in gold and silver coin, that being the exact amount then due on said note.   The plaintiff, after counting the coin, accepted it in full payment of said note, wrote " paid " across the back of the note, and gave it up to the defendant.   The plaintiff then passed the coin to one Shubal B. Buck, who was present, for Buck to look at and count, and while said Buck was looking it over, the defendant attached the coin on the said writ, as the property of Peck.   The writ was duly returned entered in court, and is now pending.   Immediately after the attachment of the coin as aforesaid, the plaintiff demanded the return of the coin, stating that he did so as the attorney of Peck.   The next day Maxwell made a writ in favor of Peck against the defendant, which was never served.   A few days afterwards, and before the service of the writ in the present action, Maxwell demanded the said $260.40 of McGee, as his own property.   Maxwell, at no time, gave McGee any notice of the claims put into his hands against Peck or any of them ; and made no demand upon him except for the whole of said $260.40, as stated above.   The plaintiff makes no claim to any fee for collection out of said $260.40, his fee having been otherwise settled.

*C. P. Huntington*, for the plaintiff.   1. Maxwell, the plaintiff, was the duly authorized attorney of Peck, to collect the note of the defendant McGee.

2. The money, when paid over to the plaintiff, the attorney, by the defendant, who received his note cancelled, became the property of the plaintiff, and could not be attached as the

property of Peck, the plaintiff becoming his debtor for the amount. *Sheldon* v. *Root*, 16 Pick. 567; *Morrill* v. *Brown*, 15 Pick. 173, 176; *Lime Rock Bank* v. *Plimpton*, 17 Pick. 159; *Commonwealth* v. *Stearns*, 2 Met. 343, 347–349; *Commonwealth* v. *Libbey*, 11 Met. 64; *Floyd* v. *Day*, 3 Mass. 403; *Jones* v. *Witter*, 13 Mass. 304, 308; *Coburn* v. *Ansart*, 3 Mass. 319.

3. The assignment to the plaintiff was valid, and the plaintiff can, as trustee, recover the $87. *Jones* v. *Witter*, 13 Mass. 304; *Stevens* v. *Bell*, 6 Mass. 339, 342; *New Eng. Mar. Ins. Co.* v. *Chandler*, 16 Mass. 275.

*D. W. Alvord & G. D. Wells,* for the defendant. 1. Marriage is an absolute gift to the husband of all the wife's personal property in possession, and of all personal property which shall come to her possession during coverture. And prior to the *St.* of 1846, *c.* 209, this money in the hands of Mrs. Peck would have been absolutely her husband's. *Russell* v. *Brooks*, 7 Pick. 65; *Ames* v. *Chew*, 5 Met. 320. He could have maintained an action against McGee, in his own name, either during his wife's life or after her decease, to recover this money. *Sutton* v. *Warren*, 10 Met. 451. Even if Peck had removed from this state permanently, this court could not, on petition, have clothed his wife with power to dispose of this money by will. Rev. Sts. *c.* 77, § 1 to 12; *Beach* v. *Manchester*, 2 Cush. 72. And if not by will, neither could they clothe her with power to dispose of it by gift. How much is all this changed by *St.* of 1846, *c.* 209? That statute is merely a protection to persons paying the wife for her labor, or repaying her money deposited with them. It does not change the relation of husband and wife, nor their respective rights to her property — as between themselves. And by its express provisions (§ 2) it does not take away the right of the creditor of the husband to attach. The money being Peck's during his wife's life, her death could not defeat his right, nor that of his creditors. His wife could make no gift of the money valid as against him, and especially none valid as against his creditors.

2. But if the money were the wife's, during her life, it became the husband's at her decease. Rev. Sts. *c.* 64, § 1. As

she could owe no debts, and there was no one to share in her property with her husband, it was not necessary for him to take out letters of administration. To require it, would be to require him to undergo trouble and expense for no possible object; for his taking out letters would be no protection to any one. Even if he could not collect of McGee by suit without first taking out letters of administration, still a payment by McGee to him would be valid. If an administrator of the wife had been appointed, this money would have been attachable in his hands by trustee process, as Peck's; and Peck could not by his own wrongful act, by acting as administrator *de son tort*, withdraw his money beyond the reach of his creditors.

3. If the gift by the wife to the daughter were good, still, at the daughter's decease, the money became Peck's. Rev. Sts. *c.* 61, § 1; *c.* 64, § 1. And, for the same reasons as in the case of the wife, the money in Maxwell's hands was Peck's and subject to attachment for his debts.

4. Maxwell is estopped to deny that the money was Peck's. He, in writing, demanded payment of the note from McGee as Peck's note. He received the money as Peck's, and for him. After it was attached, he repeatedly demanded it in Peck's name. By these acts and declarations, he induced the creditor to incur the trouble and expense of commencing suit, and has induced McGee to believe the money Peck's, and to incur much trouble and expense under that belief. It is, therefore, a "*declaration acted on*," and works an equitable estoppel. *Carpenter* v. *King*, 9 Met. 511.

5. If, for any of these reasons, the money in Maxwell's hands was Peck's, the attachment by the defendant was valid. Specie is attachable. Rev. Sts. *c.* 90, § 24; *c.* 97, § 20; *Sheldon* v. *Root*, 16 Pick. 567; *Thompson* v. *Brown*, 17 Pick. 462.

6. But though the money were not Peck's, nor liable to be attached for his debts, it was not Maxwell's, and cannot be recovered by him. Could it have been attached as Maxwell's property? It clearly was not Maxwell's in his own right. If not, then it must have been the property of Peck, or assets of the estate of his deceased wife or daughter. If it was Peck's

property, then it was properly attached. If it was assets of his wife's or daughter's estate, then Maxwell had, and has, no right to meddle with it. As administrator *de son tort*, Maxwell could have no right to collect the money. *Mitchell* v. *Lunt*, 4 Mass. 654–658. But Maxwell did not attempt to act as administrator. He acted only as attorney for Peck. As such, he undertook to collect the money; as such, McGee paid it to him. If Maxwell had no right to receive it for Peck, nor to collect it as administrator, then the money remained McGee's, and he had a right to retain it. McGee's only wrongful act, in this view, was in retaining the note. If the note belonged to the estate of the daughter, McGee may be liable to the administrator, should one be appointed, in trover, for the note; but he cannot be liable for retaining his own money. If the note belonged to the estate of the wife or daughter, and an administrator on such estate should hereafter commence a suit against McGee on the note, as a lost note, would McGee's payment to Maxwell be a defence to him against such suit?

7. If Maxwell has not a claim for the whole of this money, he has no claim for any part of it. He gave no notice to McGee of any appropriation made by Peck of any part of the money, and made no demand, except for the whole of it.

SHAW, C. J. The case presents a rather complicated state of facts; but we think the question of law, when we reach it, is not a difficult one. It is an action of tort in the nature of trover, for certain specific pieces of gold and silver coin, and of course the question is, who had the right of property in these specific pieces of coin at the time of the alleged conversion?

We may lay out of the case all question as to the relative rights of husband and wife in personal property acquired by herself, or as to the legal effect of the wife's lending the money in her lifetime, and taking notes in favor of her two daughters. Both parties here claim the property in the coin as the property of Benjamin K. Peck, or derived through him. The plaintiff claims, as the attorney and agent of Peck, who had collected and received the money on one of the notes of

the defendant given in form to one of the daughters, but paid on a claim of right by Benjamin K. Peck, and so paid by the defendant to the plaintiff as the attorney of said Peck, under that claim. The defendant claims it as a deputy-sheriff, having attached the coin as the property of Peck, on a writ against him. And, in our judgment, it makes no difference that the defendant himself was the person who borrowed the sum of $250 of Mrs. Peck, and gave his note therefor payable in terms to one of her daughters; he afterwards paid the amount on a claim of right to the attorney of Peck, and took up his note. He thereby acknowledged the right of Peck as the creditor, and discharged his own obligation as a debtor. The case, therefore, stands on the same footing as if a debt of any other person due to Peck, and in the hands of Maxwell, his attorney, for collection, had happened to be paid in gold and silver, and the defendant, as a deputy-sheriff, had happened to be present with a writ against Peck, and had taken the coin from the table without the consent of the attorney, as an attachment of the property of Peck.

The question then is, whether this coin could be attached as the property of Peck; and the court are of opinion that it could not. The money was paid to Maxwell, the plaintiff; he thereby collected a debt due to Peck, and discharged the debtor; he thereby became accountable to his principal, and liable to pay him, or dispose of the money as he had directed or might direct; and this duty to account and pay over was a *chose in action,* which was not attached by taking the coin in which the debtor had paid the attorney. No property in that specific coin vested in Peck by that payment. Money has no ear-mark; in this instance, the coin was the currency in which the attorney received the debt, but it would not vest the title to the coin in the creditor, unless it was put into his possession, by being paid to him.

We do not mean to say, that the money of a debtor may not be attached by an officer, if he can find it and take it without committing a trespass; no doubt it may be. *Sheldon* v. *Root,* 16 Pick. 567; *Thompson* v. *Brown,* 17 Pick. 462; Rev. Sts. *c.* 97, § 20. But in this instance it had not become the

property of Peck. We do not place this decision on the fact that, in this case, the plaintiff, with the consent of Peck, had become liable to pay part of the proceeds to Hays, who produced the note and delivered it to him, and who had some claims upon it, which were sanctioned by Peck, the debtor; though this fact illustrates the position. But independently of this, Maxwell, by receiving the money as the attorney of Peck, became liable to account to him for it. He might have claims upon it, for his own fees or for charges to others. He might discharge his liability to his principal, by paying him in any lawful currency. The money was not strictly that of Peck till paid over; but the identical pieces of money collected are not necessarily to be paid over to him. Until that be done, his right is a *chose in action. Dubois* v. *Dubois* 6 Cow. 497. The attachment was a nullity, and the officer took no special property by it in the coin.

*Judgment for the plaintiff.*