DALTON CITY COMPANY, plaintiff in error, *vs.* DALTON MANUFACTURING COMPANY, defendant in error.

1. The absence of the leading counsel in the military service of the Confederate States, during the existing war, is in the nature of providential cause, and entitles his client to a continuance.
2. The attorney whose name is subscribed as such to the pleadings, if not surreptitiously appended, is to be regarded as leading counsel.
3. If an attorney be absent from providential cause, or from inevitable necessity, his substitution of another attorney in his general business, is not binding upon his clients, who are entitled to demand and have a continuance on account of his absence.
4. A separate debt cannot be set off to a joint demand.
5. Though an agreement between two parties concerning a particular business, in which real estate belonging to one of them is to be used, be denominated *"a lease,"* and the fruit to accrue to the owner of such estate be called "rent," yet if it appear that such fruit is to come *only* from the *"nett profits"* of the business, and is not to exceed a certain proportion of them, the parties will in law be regarded as partners.

Debt, in Whitfield Superior Court.    Tried before Judge WALKER, at November Term, 1861.

Suit was brought by the Dalton Manufacturing Company, machinists, against the Dalton City Company and Rufus K. Ford, as partners, on the following note :

DALTON, GEO., Oct. 10, 1850.

$658.    One day after date I promise to pay to Dalton Manufacturing Company, or order, the sum of six hundred and fifty-eight dollars, for value received.

R. K. FORD & Co.

The declaration avers that the note was given for certain machinery which had been set up and attached to a steam mill, the property of defendants, in the city of Dalton, and that the lien of plaintiffs on the same had been duly made out and recorded.

The Dalton City Company, one of defendants, filed their plea denying any partnership between Ford and themselves, and also a plea of set-off, setting up an indebtedness to them from the plaintiffs of some $2,500 00, and offering to give credit to plaintiffs for the amount of their claim should the same be established, which pleas were signed by J. A. Glenn, attorney for Dalton City Company.

When the case was called for trial, the Dalton City Company, by Benjamin E. Green, Esq., their attorney in fact, moved for a continuance on the ground of the absence of their counsel, A. R. Wright and J. A. Glenn, Esq'rs., who were in the military service of the country, which motion was refused by the Court, on the ground that Mr. Glenn had made an arrangement with L. W. Crook to represent him in his cases. The fact was, (so states the bill of exceptions,) that when the case was called, Judge Crook had left the Court on a canvass for the Confederate Congress. To this refusal of the Court to grant a continuance defendants excepted.

On motion of plaintiffs, the plea of set-off was stricken out against the opposition of Dalton City Company, and said defendant excepted.

Plaintiffs having offered in evidence the note sued on, and the record of their lien, also introduced a lease from the Dalton City Company to R. K. Ford, whereby said Company leased to said Ford for the period of one year, with the privilege of renewal for four years, the steam mill in the city of Dalton, with all the machinery, etc.

The second article provides that the death of Ford at any time shall terminate the lease, and that said lease " partakes of the character of a personal trust, so far at least as that it is understood that it is not assignable, neither shall it pass to executors or administrators in case of said Ford's death,"

and that Ford shall give his personal attention to the working of said mill.

Article third describes the kind of work to be done at the mill, namely, a general wood machine shop and cabinet business, for which purpose Ford is to furnish certain machinery, the cost of said machines to be allowed for, and deducted from, the gross profits of the business in estimating the amount due for rent, as provided for hereafter."

Article fourth provides that " inasmuch as both parties are at a loss to decide what sum would be a fair rent for said property, or what rent the proposed business will justify, it is agreed that said Ford shall pay as rent for the first year a sum equal to one-half the nett profits of his business, as well on putting up elsewhere any work, the material of which is prepared wholly or in part at said mill, as on the work done, put up and completed at said mill; and at the expiration of said first year, said parties shall agree on a final sum as rent for the term of renewal, or ascertain the same by reference to the profits of said business, said sum not to exceed or fall short of one-half the nett profits of said business, and for this purpose said Ford shall keep a correct account of all the transactions of said mill, and also of all work done elsewhere, in putting up and finishing any work, the material for which, in whole or in part, may have been prepared at said mill, in a book or books, which shall be at all times open to the inspection of the agent of said Dalton City Company, said books to be posted weekly, and a balance struck every three months, when the proportion of rent appearing due shall be payable, and if the business should require a book-keeper, one to be employed by Ford, with the approval, as to the person to be employed, of the agent of the Dalton City Company.

By article fifth, Ford may, should the business require it, erect additional buildings, with the consent of the agent of the Company.

Article sixth contains the covenant of Ford to pay rent as above described, and to deliver peaceable possession on the termination of the lease.

By seventh article it is agreed that on the expiration of

the lease, Ford may remove from the mill any machinery added by him, unless the Company should wish to retain it, in which case he is to receive a reasonable price therefor.

Plaintiff then proved that the note was given for machinery furnished to R. K. Ford & 'Co., who were in possession of the mill under the lease.

Defendant proved by BENJAMIN E. GREEN, that as agent of the Dalton City Company, he gave notice to Robert Batey, the president and general manager of Dalton Manufacturing Company, that if said Company furnished Ford with machinery, they must look to Ford, and not to him or the Dalton City Company for payment. Witness did not tell Batey not to proceed with the work for Ford in the precise words of the statute, but did tell Batey, in substance, that if he did proceed, he must look to Ford alone for payment. Batey had come to witness to know who he was to look to for pay for the machinery.

J. W. WALKER, introduced by plaintiff, testified that while he was working at the mill, Benjamin E. Green came there, and said that he wished he had had witness there five years ago, it would have saved him several thousand dollars.

The Court charged the jury as follows :

"In the opinion of the Court, the Dalton City Company is not, by the lease introduced, a partner of R. K. Ford, and this being the only evidence on the subject, you will not find a verdict against the Dalton City Company. It is admitted that you shall find a verdict against Ford.

The only question for your consideration is, whether this debt creates a lien on the mill or not? In the opinion of the Court, the lease, and Ford's possession under it, would be sufficient to authorize him to create a lien on the premises for the value of the machinery purchased by him for the purposes contemplated by the lease. It is insisted that the lien has been prevented from attaching by reason of the notice given according to the provisions of the 8th section of the Act of 1834.

It is a question of fact for you to decide, under the evidence, whether the Dalton City Company, before the com-

mencement of the making of said machinery, gave notice to plaintiff not to proceed therewith.   If it did give such notice, then the plaintiff could not proceed to commence and make machinery, and thereby create a lien on the property of the Dalton City Company, for the plaintiff, by the lease, shews title in the Dalton City Company.   What the notice was. which Colonel Green gave to the President of the Company, Batey, is for you to decide under the evidence.   If the notice was that the City Company would not be liable as a partner for the debt, and did not notify plaintiff not to proceed with the work, it would not relieve the premises from the lien. The notice need not be in the very words of the statute.   If the notice was that the plaintiff must look to Ford alone for payment, exclusive of any lien, this would be sufficient, provided it was given before the work commenced.   Did he in substance notify Batey, before the work commenced, that the property would not be bound?   If so, plaintiff could not go on and commence and make machinery, and thereby create a lien on the property.   If such notice was not given, then the lien attached, it not being denied that the other requisites to create a lien have been shown.   The fact that the plaintiff is a corporation, and the Dalton City Company is also a corporation, makes no difference in the legal principles which govern the case, for a corporation may be a *machinist* in the eye of the law as well as an individual."

Counsel for the Dalton Manufacturing Company excepted to that portion of the charge directing the jury to find, under the testimony, that the Dalton City Company was not a partner of Ford, and here alleges the same to be error.

The jury found a verdict against Ford for the amount of the note, to be levied on the property described in the declaration in the case, and " we find for the Dalton City Company."

The Dalton City Company moved the Court for a new trial:

1. Because the Court refused to grant a continuance on account of the absence of defendant's counsel, A. R. Wright and J. A. Glenn, absent in the military service of the Confederate States.

2. Because the Court refused to grant a continuance for

the absence of J. A. Glenn, on the ground that he had made an arrangement with L. W. Crook to represent him in his cases, though in fact, when this case was called, Judge Crook had left town on a canvass for Congress, and all the other counsel whom defendant could have called on for assistance in conducting the trial, had left for their homes.

3. Because, under these circumstances, Benjamin E. Green, the general agent for defendant, not being a practicing attorney, nor familiar with the trial of causes, was compelled to conduct the trial as counsel, and either omitted to state, when on the stand as witness, that notice was given to Batey before the commencement of the work, or referred to the time when the notice was given so casually as to escape the attention of the jury.

4. Because, under the circumstances, defendant did not have a fair chance of their case to the jury.

5. Because this was the first trial, the case having been carried to the appeal by consent.

The motion was afterwards heard at Chambers, and over-ruled on all the grounds taken therein. In the judgment refusing a new trial, Judge Walker remarks:

As to the refusal to continue the case, it is perhaps proper to state that Benjamin E. Green, Esq., is an attorney-at-law, and acts as attorney-at-law and in fact for the Dalton City Company, making out the pleadings, and representing their interests in this Court, prepared their plea in this case. It did not appear to the Court that either Judge Wright or Colonel Glenn was ever consulted as to this case, but were retained generally by the Dalton City Company.

To this decision, refusing a new trial, defendant excepted, and alleges the same to be error, as also the ruling of the Court striking out defendant's plea of set-off.

Counsel for plaintiff alleges as error the charge of the Conrt directing the jury that no partnership existed, under the testimony, between the defendants.

BENJAMIN E. GREEN, for plaintiff in error.

McCUTCHEN, *contra.*

Dalton City Company *vs.* Dalton Manufacturing Company.

*By the Court.*—JENKINS, J., delivering the opinion.

In this case each party excepted to certain rulings of the Court below.

1. The Dalton City Company, one of the defendants, except to a decision of the Court overruling their motion to continue, on account of the absence of J. A. Glenn, their attorney of record, in the military service of the country, and the fact of his being so engaged, and being absent from the Court by reason thereof, is not disputed. The Superior Courts of this State generally, as well as this Court, have considered such absence, since the commencement of the existing war between the Confederate States and the United States, as in the nature of providential cause, and have in numerous instances allowed continuances, upon high considerations of public necessity. It is a time when the country requires the presence of its citizens in the tented field, and public policy, if not public safety, requires that there should be no impediments left in the way of those disposed to engage personally in the war. It had become the settled practice of this Court, previous to the late session of the General Assembly, to allow continuances for this cause, which, by the Act of 14th December, 1861, are expressly authorized in the Superior Courts.

2. Indeed, the Judge presiding in this case does not put his refusal to allow a continuance on the insufficiency of the ground assumed, but on its inapplicability to this case. He was not satisfied, in the first place, that the absent attorney was of counsel in this cause. But we find that the defendant's plea has the name of J. A. Glenn, as attorney, appended to it. No proof appears that it was placed there surreptitiously, and in the showing made by the party, it is made to appear that he was the attorney of record, and this, we think, should have been quite sufficient to satisfy the Court that he stood in that relation to the party and the case.

3. But again, the Court assigned as a reason for overruling the motion, that J. A. Glenn had placed his professional business in the hands of another attorney of the Court, who had been present at that term, but had left the

Court before this case was called for trial, he not being in the military service of the country. It does not appear that the party applying for the continuance had ever assented to the substitution, or even been informed of it. We hold that he was not bound by it, and that he should have been allowed a continuance upon that showing.

4. The Dalton City Company, (one of the defendants) filed a plea of set-off, whereby they sought to set off, against the plaintiff's demand, an indebtedness of plaintiff to them, in which the other defendant, Ford, had no interest. Upon plaintiff's motion, the Court ordered this plea stricken out, and the Dalton City Company excepted. Was this ruling of the Court correct? It will be borne in mind that the plaintiffs below had sued the Dalton City Company and Rufus K. Ford as partners, doing business under the firm of R. K. Ford & Company, upon a note signed R. K. Ford & Company. It is not denied that the person signing and delivering this note was Rufus K. Ford. The Dalton City Company had, by another plea, denied the partnership, and denied that the note sued on was their note. But this was a defence involving matter of fact, necessarily concluding to the country, and could only avail the party interposing it, when sustained by verdict. If the jury should find for the Dalton City Company upon this plea, there would be an end of their liability in this action. They would be protected. But in advance of the verdict, the Court could not assume that there was no partnership. Upon a motion to strike out the plea of set-off, the Court could look only to the declaration, and to that plea: it was bound to ignore the other plea. The case, then, was this: suit against two as partners, set-off pleaded by one of them, of a debt due to that one by plaintiff, and motion to strike out the plea of set-off. We think the Court very properly sustained the motion, there being no mutuality in the demands. Partnership debts are joint. The debt from the plaintiff below to the Dalton City Company was several.

"The statutes expressly confine the right of set-off to cases in which there are mutual debts, and it is, therefore,

clear that, as well the debt sought to be recovered, as that to be set off, *must be due in the same right.* A joint debt, therefore, cannot be set off against a separate one, nor can a separate debt be set off against a joint demand, unless it be expressly agreed between the parties that such set-off shall be allowed." Babington on the Law of Set-off, etc., 37.

"A joint debt and a separate debt cannot be set off against each other." Montague on Set-off, 25.

"This is evident, and may be collected from all the decisions on set-off in the case of joint debts and several debts." Ibid, note 2, g.

"A note of one of two partners cannot be set-off against a partnership demand." 4 Wend's R., 583.

And for the same reason a debt due to one partner cannot be set-off against a debt due by the partners.

"Under the Bankrupt Law of the United States, a joint debt may be set-off against the separate claim of the assignee of one of the partners. But such offset could not have been made at law independent of the Bankrupt law." 5 Cranch, 34.

Where one of two partners dies, and the survivor sues or is sued upon a partnership demand, set-off of a separate debt is allowed, expressly upon the ground that the right of survivorship, accruing upon the death of one partner, converts that which was originally a joint, into a several debt. Slipper, Assignee of Lane, vs. Stidstone; 1 Esp. Cases, N. P., 47; 5 T. R., 493. French vs. Andrade, 6 T. R., 582. These cases, as well as Fletcher vs. Dyke, 2 T. R., 32 ; and Stacey, Ross *et al.* vs. Decy, 7 T. R., 359, (which for other reasons were excepted from the rule,) all go to affirm the general rule upon which we place this decision, viz: that a separate debt cannot be set-off against a partnership debt, nor a partnership debt against a separate debt. There is nothing in the case at bar to take it out of the operation of the general rule.

The plaintiff in error relied upon the case of Webster vs. Scales, referred to in note 2, to the text in Montague on Set-off, 27. But it will be observed that the text, supported by this reference, does not at all involve the rule governing the case at bar.

This treatise is quite remarkable for the method pervading it. The author first treats of the law of set-off in cases of joint and several debts; that is a distinct head, and from it I have drawn authority for this case. He next treats, under a different head of the law of set-off, as affecting trustees, under which he affirms as law, "that a debt from the *cestui qui trust* may be set off to an action commenced by the trustee in right of trust."

This is the text supported by Webster vs. Scales and other cases mentioned in note 2, n. In all of the cases, the question was simply whether, at law, the Court could look beyond the legal title of the trustee and recognize the equity of the *cestui qui trust*, for the purpose of allowing as a set-off a debt due by the *cestui qui trust* to the defendant, and in such case the set-off was held to be good. But there, there was no lack of mutuality. The suits were prosecuted for the benefit of the *cestui qui trusts*, and the debts, attempted to be set-off, were due by the *cestui trusts*. There was mutuality. The legal title of the trustee alone stood in the way, and Ashhurst, Judge, in Webster vs. Scales, remarks: "it is true, that formerly the Courts of law did not take notice of any equity or trust; but of late years, as it has been found productive of great expense, to send the parties to the other side of the hall, (to equity,) whenever this Court have seen that the justice of the case has been clearly with the party, they have not turned him round upon this objection." In the last remark, (referring to the justice of the case,) is disclosed the use sought to be made of it. The plaintiff in error insists that inasmuch as, in this suit, the other party seeks to enforce a statutory lien upon property of the Dalton City Company for a debt of R. K. Ford, that Company is, in equity, entitled to the set-off.

But here again the plaintiff in error begs the question of partnership, which the Court cannot concede. To that question we now come.

The plaintiff in the Court below excepts to that portion of the charge to the jury which instructed them, that the written agreement between Rufus K. Ford and the Dalton City

Company, (set forth in the statement) did not, in law, make them copartners.  The solution of the question, thus raised, will be found in the case of Buckner vs. Lee *et al.*, 8th Georgia Report, 285.  The cases are strikingly analogous, the chief difference being, that in that case the party denying the partnership contributed the services of certain slaves in the business, and in this, the use of certain real estate, with a building thereon, and certain machinery therein.

In that case, the owner of the slaves was to receive, by the terms of the agreement, " one-half of the nett proceeds of the shop, (a blacksmith's shop) *for the use of the negroes.*"

In this, by the agreement, the owner of the real estate and machinery was to receive, " as rent for the year, *one-half the nett profits of the business.*"  Here is great similarity.  In each case nett profits are specified, and it is stipulated in what proportion they are to be divided.  In one case the owner of the slaves is to have one-half the nett profits " for the *use* of the slaves," (in other words, for their hire.)  In the other, the owner of the premises was to have one-half the nett profits " *as rent,*" for them.  In each case, the party not owning the property, to be employed in the business contemplated, was to conduct it personally.

In the case of Buckner vs. Lee, *et al.*, this Court held that the agreement constituted a partnership, and not a contract of hiring.  But there are in this case certain distinctive features not appearing in that, which deserve consideration. It was stipulated in the agreement before us, that the lease was to determine upon the death of Ford, and not to pass to his executors or administrators; that during his life, it shall not be assignable; that only a certain kind of work shall be done in the mill; that Ford shall put in certain specified machinery additional to that already there, which shall be paid for out of the gross profits ; that books shall be kept by Ford, showing a correct account of all the transactions of the mill, which shall be posted weekly, and at all times open to the inspection of the other party; that if necessary a book-keeper shall be employed, but the other party shall have a voice in the selection of one.

Now while it may be conceded that most, if not all, of these stipulations might be incorporated in a veritable lease without vitiating its character, yet it must be admitted that they are far more appropriate to, and indicative of, a contract of partnership than a lease, in the usual significance of that term. When to them we superadd, that the owner is not to receive a stipulated rent, but a specified portion of nett profits, we find it exceedingly difficult, if not impossible, to withdraw the case from the control of Buckner vs. Lee *et al.*

5. In cases of this kind, where a partnership is asserted by one party and denied by the other, the true test is whether the party denying " was to receive a share of the profits, *as profits,* or whether the profits were relied upon only as a fund of payment; or in other words, whether the profit, or premium, or annuity, is certain and defined, or is casual, indefinite, and depending on the accidents of trade. In the former case it is a loan, (I add on hiring or lease,) in the latter it is a partnership." Story on Part., sec. 67. " In short, in all cases of this kind the real question to be solved is, whether the party is, in effect, to participate in the rise or fall of the profits, as such, or whether he only looks to the profits as a fund for the payment of the annuity, but not exclusively to that fund. In the former case he is a partner, in the latter he is not." Story on Part., sec. 69.

In Buckner vs. Lee, Judge Nisbet, summing up the authorities there cited, (to which I refer, without enumerating them,) says, " it is clear, then, that if one is to receive a certain proportion of profits, as one-third, or one-half, as profits, he is a partner. If a certain sum is agreed to be paid out of profits, and the party does not look to that fund alone for payment, he is not a partner; but if the sum to be paid is not fixed, but may be increased or diminished by the amount or accidents of the business, then the receiver is a partner." Applying these rules to the agreement before the Court, it is manifest that the Dalton City Company must occupy the position of partners. What is the sum fixed to be paid to them ? If, at the end of the year, the income and expenditures exactly balance, showing no nett profits, what

Dalton City Company *vs.* Dalton Manufacturing Company.

would be their rent—how ascertained? It avails nothing that they specify that they shall receive one-half the nett profits "*as rent.*" It is apparent that what they are to receive will be more or less, or nothing at all, as the "accidents of trade" may determine. This being ascertained, the conclusion of law is, that whatever they may receive will be received "*as profits,*" not as rent. It matters not that the parties christen the contract "*lease,*" and its fruit "*rent.*" The law looks through the whole agreement, and finding that the Dalton City Company are to receive no fruit, unless there be nett profits, and only a stipulated proportion of them, sees therein evidence of a community of losses and profits, and denominates it a partnership.

We hold, therefore, that in the portion of the charge excepted to by the plaintiff below, the Court erred.

Let the judgment be reversed.