HUGULEY *vs.* MORRIS & TUMLIN.

1. T bought negroes and turned them over to M. It was agreed that the latter, being a skillful trader, should take charge of them, carry them to a point some distance off and sell them; that the money invested by T should be returned, the expenses paid and the net profits divided. M was allowed to purchase other negroes and draw on T for the price of them. No agreement was made as to losses. M sold a negro to H, using the firm name of M & T, and warranted soundness. The negro proving unsound, M took him back and gave a note signed with the partnership name for the amount to be paid back:

*Held*, that prior to the Code these facts would seem to make M & T partners, and as such liable on the note.

2. Under the facts above stated, if T was not a partner of M, the latter was certainly his agent in respect to the purchase and sale of negroes, and as such had power to bind him in respect to the soundness of the negro, and to settle a dispute relative thereto by giving the note ; and T, or his estate (he being dead), is legally liable on the note so given. A verdict releasing T's estate was therefore contrary to law.

Partnership. Principal and agent. Contracts. Promissory notes. Before Judge HILLYER. Cobb Superior Court. November Term, 1879.

Huguley sued Morris & Tumlin on a promissory note for $1,050.00. They pleaded (1), the general .issue, and (2); that they had embarked in a speculation in negroes, which had been settled up before the note was given—in the nature of a plea of no partnership.

On the trial the evidence showed, in brief, the following facts : "In 1859 Morris and Tumlin agreed to enter into a speculation in negroes. Tumlin was to furnish the money necessary for buying. Morris was to conduct the buying and selling, he being a skillful negro trader. They were to sell, return Tumlin his money, pay expenses and then share the net profits. Nothing was said as to losses, because they did not expect any. Tumlin bought a number of negroes, which he turned over to Morris. The latter went to Columbus, (Rome being the starting point) bought and sold until the entire stock on hand had been disposed of, and then returned to Marietta and had a settlement with Tumlin. On this trip, in the firm name of Morris & Tumlin, he sold two negroes to Huguley, warranting their soundness. Shortly after the return and settlement of Morris, Huguley appeared, showed unsoundness on the part of one of the negroes and threatened suit on the warranty. Morris, still in the name of Morris & Tumlin, agreed to take back this negro, and not having the cash in hand, gave the note now sued on, signing it Morris & Tumlin. At the same time Huguley signed a.

v 65—43

paper stating that he therewith returned the negro to Morris, or to J. S. Morris, one of the firm of Morris & Tumlin. In the contract between Morris and Tumlin, no limit of time was put on the continuation of the business, and Huguley had no notice of any termination or dissolution. Tumlin, in his testimony, stated that he did not consider that this made Morris his partner, but only his agent; also, that Morris had no special authority to sign this note or a similar paper.

Under the charge of the court, the jury found against Morris and in favor of Tumlin. Tumlin having died, Gray, administrator, was made a party. Plaintiff moved for a new trial on the following grounds:

(1), (2), (3). Because the verdict was contrary to law and evidence.

(4). Because the charge was misleading and confusing. The motion was overruled and plaintiff excepted.

JACKSON & LUMPKIN; GOBER & LESTER, for plaintiff in error.

D. & T. B. IRWIN; W. T. WOFFORD; A. JOHNSON, by A. T. AKERMAN, for defendants.

JACKSON, Chief Justice.

Suit was brought by Huguley against Morris & Tumlin on a joint and several note, signed Morris & Tumlin, for $1,050.00. Morris put the signature, Morris & Tumlin, to the note. Tumlin pleaded that he did not sign it or authorize anybody to sign it for him. The reply was that Morris & Tumlin were partners, and therefore Morris had power to sign the note as he did; or that if they were not partners, Morris was Tumlin's agent in the business out of which the note sprang, and therefore he was empowered in law to sign Tumlin's name to it. The jury found a verdict for plaintiff against Morris, but in favor of Tumlin's administrator, who had been made a party, against

the plaintiff, who made a motion for a new trial on three grounds: first, that the court charged the law erroneously, second, that the verdict is contrary to law, and third, contrary to the evidence.

The exception to the charge is general, going to the entire charge without specifying particular errors, and cannot be considered in view of many rulings of this court. The question, therefore, is narrowed to the one point: Is the verdict contrary to law under the evidence? and that depends on this, was Morris authorized by law to sign Tumlin's name to the note and to bind his estate?

1. Did the facts make them partners? The partnership was formed in 1859, prior to any Code of Georgia, and to the definition of a partnership as to third persons therein given. Code, §1890.

Therefore the case of *Sankey & Shorter vs. Columbus Iron Works*, 44 *Ga.*, 228, would not rule this, even if the point there decided covered this case; for that case arose after the adoption of the Code, and construed section 1890 of it, which makes either "a joint interest in the partnership property, or a joint interest in the profits and losses of the business, constitute a partnership as to third persons," and which declares that "a common interest in profits alone does not." The question is, what constituted a partnership in Georgia *as to third persons* before the Code? In *Buckner vs. Lee et al.*, 8 *Ga.*, 285, this court, Judge NISBET delivering the opinion, said: "A community of property and an agreement to share in the losses and profits of a business, or community of losses and profits alone, will make the parties partners. But there may be a partnership without such community and agreement. There may be a partnership where there is no community of property, no agreement to share in the losses and profits, and no community of losses—that is to say, an agreement that one of the parties shall receive a proportion of the net profits of the concern, for money advanced for its use or property furnished for its use (as

here), will constitute a legal partnership as to third persons." The judge then goes on to cite Story on Part., §§66, 67, 68, 69, 70; Collier on Part, 28; 2 W. Blackstone, 928; 2 H. Blackstone, 235; 12 Conn., 69; 18 Wend., 175; 20 *Ib.*, 70; 17 Vesey, 204; 1 Rose, 91; Carey on Part., 11, note; 1 Hill, 526; 1 Iredell, 199; 38 Eng. C. Law, 495; and concludes that "if one is to receive a certain proportion of the profits—as one-third or one-half—*as profits*, he is a partner. If a *certain sum* is agreed to be paid out of profits, and the party does not look to that alone for payment, he is not a partner; but if *the sum to be paid is not fixed*, but may be increased or diminished by the amount or accidents of the business, then the receiver is a partner," and the ruling of the whole court is, that "upon an agreement between Lee and Everett that Lee should take certain negroes of Everett, and work them in a blacksmith shop, furnish all supplies, pay all expenses, and give Everett one-half of the net proceeds of the shop for the use of the negroes, that, as to third persons, they were partners."

It would seem that under this ruling, even if it were clear that in the case at bar Morris was to bear all expenses of this venture of the sale of the negroes Tumlin bought for him to sell, and yet Tumlin and himself were to share the net profits, they would be partners. But there is some confusion in the record on that point. Nothing is said as to losses, for the reason that neither anticipated loss in the sale of the slaves; and while one part of Morris' testimony, as given in the record, would seem to imply that he was to bear the expenses, Tumlin does not so swear, and there is certainly no express contract as to losses.

In *Perry vs. Butt & Banks*—14 *Ga.*—it is ruled that, "If three persons agree to sell goods, two of them contributing $3000.00 each, and the other rendering his personal services, the profits to be equally divided after the payment of debts and expenses, and *with no stipulation as to losses*, whether this constitutes them partners or

not as between themselves, it does as to third persons."
In that case, Judge LUMPKIN says: "The truth is in the
absence of any express agreement to the contrary, the
law, under this partnership in profits, devolves the losses
likewise upon each and all of the partners. And that
not only to the extent of the capital employed, but over
and beyond it." And he cites Story's definition of part-
nership as a remarkable fact, that it says nothing about
loss, but defines it to be "a voluntary contract between
two or more persons to place their money, effects, labor,
skill, or some or all of them, in lawful commerce or busi-
ness, with the understanding that there shall be *a com-
munion of the profits thereof between them.*"

That able judge then adds: "State the present case to
any plain man of reason and ordinary intelligence, that
Butt, Banks & Tillinghast agreed to engage in trade in
Columbus; that the two former, having funds, were to
put in $3000.00 each, and the latter, possessing superior
skill and experience in business, was to give his personal
services and attention, and that they were to divide the net
profits equally, would he have any hesitation in pro-
nouncing this a partnership? And if told that it might be
so as to Butt & Banks, but not as to Tillinghast—that the
law looked upon him as an agent merely—would he not
be bewildered at such metaphysicality?" And then he con-
fesses to the same inability himself to draw such distinc-
tions, and adds:

"But whether a community of profits constitutes these
persons partners *inter se* or not, it never has been ques-
tioned in any respectable quarter, that it would undoubt-
edly make them answerable to *third persons*, to whom
they have held themselves out, and with whom they have
contracted, as partners, and who cannot be affected by
these secret contracts as between themselves."

Mr. Justice Story in his work on Partnership—§54—
enumerates five distinct classifications wherein parties are
partners as to third persons, the third of which is in these

Huguley *vs*. Morris & Tumlin.

words: "Thirdly, where the profit is to be shared between the parties as principals in like manner, but the loss, if any occurs beyond the profit, is to be borne exclusively by one party only." See also the same work from §53 to §70 inclusive.

It would seem therefore from the two cases cited from our own decisions in the 8th *Ga.*, and 14th *Ga.*, as well as from the above classification of Judge Story, that the facts of this case, occurring prior to the Code, make a partnership under Georgia law as it was before the Code. These facts in short are, that Tumlin bought and paid for certain slaves and turned them over to Morris to sell, who was to buy others and draw on Tumlin to pay for them, and then the net profits were to be divided equally between them, Morris putting in his skill as a negro trader against Tumlin's money, with no express agreement as to loss—the record making the testimony confused as to who should pay the expenses incurred in the transportation, board, etc., etc., of the slaves.

In my judgment these facts made them partners in 1859, and Morris had authority to sign the partnership name to the note.

2. However that may be, we are all agreed that Tumlin constituted Morris, if not his partner, at all events his agent in this venture of negro-trading—that he authorized him to sell the negro, the unsoundness of which was the consideration of the note sued, and that there being no notice of its termination to Huguley, the plaintiff, the agency continued in respect to the negroes sold by Morris up to the making of the note, and that he was empowered by virtue of the continuance of this agency to sign Tumlin's name to the note. A little more than a month after the sale of the negro, he was returned to Morris by the plaintiff, and Morris gave the note sued on for him, having a short time before turned over to Tumlin all the money the latter had embarked in the venture, as well as one-half of the profits, and having no funds with which

to pay the estimated loss to the plaintiff— *ex æquo et bono*, Tumlin having much the larger share of the money plaintiff paid for the unsound slave, ought to pay for him under the warranty ; and the only question is his liability on this note. Taking into consideration all the facts, the agency of Morris by reason of the partnership or of the contract, we think that this agent had the legal power to bind Tumlin in respect to the value of this slave, or the difference between his value if sound, and his value in his unsound condition, and to settle the dispute and give the note, and that his, Tumlin's, estate, on the facts made in this record, is legally liable upon the note. Story on Agency, 8th Ed., §73 and note—127 and notes—133 and note.

The verdict is therefore contrary to law and must be set aside, and a new trial granted.

Judgment reversed.