## BRANDON & DREYER *v.* CONNER *et al.*

Where A, who had a contract to grade a portion of a railroad, made a contract with B, by the terms of which B was to "put in" sixteen mules and harness against A's six mules and his services, and to receive one half of the net profits of the business for the use of his mules and harness, there was a partnership between them as to third persons, although they agreed that B was to have nothing to do with the work and was not to be responsible for any debts.

Argued May 1,—Decided June 26, 1903. Rehearing denied August 11, 1903.

Complaint. Before Judge Nottingham. City court of Macon. December 27, 1902.

*Hardeman, Davis, Turner & Jones,* for plaintiffs.
*Steed & Ryals,* for defendant.

FISH, J. Brandon & Dreyer brought an action, in the city court of Macon, upon two promissory notes, against F. B. Dunn & Conner, as a firm composed of F. B. Dunn and B. F. Conner. Conner pleaded the general issue, non est factum, and specially that "he was not and never had been a member of the firm of F. B. Dunn & Conner; that he had never held himself out as a member of said firm; that he had never incurred any liabilities under said firm name, or authorized any one else to incur liability under said firm name." The case was tried without a jury by the city-court judge, who rendered a judgment, in favor of the plaintiffs, against F. B. Dunn & Conner, and F. B. Dunn and Ben. F. Conner, as partners composing such firm. Conner made a motion for a new trial, upon various grounds, which was granted by the judge, "upon the sole ground that the court erred in holding and deciding that under the evidence a copartnership existed between F. B. Dunn & Conner as to the plaintiffs, Brandon & Dreyer." Thereupon the plaintiffs excepted. The question before us, therefore, is, did the court err in granting the defendant Conner a new trial upon this ground. In other words, was the original judgment, holding that, under the evidence submitted, Conner, relatively to the plaintiffs, was a partner of Dunn, demanded by the law and evidence? Under the law of this State, as laid down by previous rulings of this court, we think that the original judgment was right and the judgment granting the new trial, upon the ground specified, was wrong. Whether Dunn and Conner, relatively to third persons, were partners depends upon the

contract between them. The only witness who testified as to this contract was Conner. He was introduced as a witness in his own behalf, and testified as follows: "I know F. B. Dunn. My relation to him in this matter was just this: Some time in the early summer of last year, 1901, F. B. Dunn and a man named Davis, the foreman of W. J. Oliver & Co., the head contractors on the extension of the Macon, Dublin & Savannah Railroad, came to my house to see about getting some mules to help in the work of grading. I had sixteen head. . . Davis said to me, in Dunn's presence, that Oliver & Co., the head contractors, had sublet to F. B. Dunn. . . the choice mile of the work of grading the road; that Dunn had already obtained all the credit he needed for the work through W. J. Oliver & Co.; and that if I would let Dunn have my sixteen mules on a share of the profits, I would get good pay for my mules. Dunn said that he had already gone to the expense of $100 in getting his subcontract for the mile of grading and in arranging for the credit he needed. . . He figured that if I would let him have my mules, I would get enough out of it to make a good price each day for their service. Dunn said he had three pair of mules. I agreed with Dunn to put in my sixteen mules and harness against his six mules. I was to have nothing to do with the work, and was to be responsible for nothing, and he was to pay me one half of the net profits, after the creditors were all paid from the proceeds of the business. This was to be compensation for the service of my mules, and I was to have nothing more to do with it. I was to be responsible for nothing, and I told him I would go into it in no other way. He said he had already arranged through Oliver for all the credit he needed, and I would have nothing to do with that. . . I never got a cent of money from that work. I never handled a single cent. Under my contract with Dunn, I was not to have anything to do with the money or the work, but he was to pay me one half of the net profit he got out of it. . . I never authorized Dunn to use my name at all. I never authorized him to use my name in signing those notes [the notes sued on] or any other notes. . . I went to the work several times, and stayed down there about a week some time between the 20th of November and the 10th of December, 1901. I was anxious for the creditors to get their money, especially after I heard Dunn had been using my name. I knew I was to get nothing until the creditors were paid.

I went down there about the 20th of November when I heard that Dunn had used my name, and I did my best to help the thing through. I wanted the creditors to get their money. I was not responsible to them; but when I heard he had used my name, I wanted them to get their money, and I went out and dug with my own hands. . . In my contract with Dunn I put in sixteen mules and harness, and he put in six mules and was to have charge of the work, and he had already arranged for his credit. . . I knew I could not look after anything, for my child was sick and at the point of death. . . I never had any control over the work or over the money, and was not to have under the contract. I was to have no control over the profits. He was to pay me one half of the net profits for the service of my mules."

The construction which Conner placed upon the contract between himself and Dunn is immaterial, and under the law of this State, in a case of this character, the intention of the parties at the time the contract was entered into is likewise immaterial. Whatever may have been the intention of the parties, and whatever may have been the understanding of Conner as to the legal effect of the contract, we think that Conner's testimony shows that, relatively to third persons, he was a partner of Dunn. The case of *Buckner* v. *Lee*, 8 *Ga.* 285, is directly in point, and is, we think, decisive of the question before us. There it was held that under " an agreement between A and B, that A should take certain negroes of B, and work them in a blacksmith's shop, furnish all supplies, pay all expenses, and give B one half of the net proceeds of the shop for the use of the negroes," they were partners as to third persons. In that case, Judge Nisbet, after quoting from Story and Kent and citing other authorities, said: " It seems, then, clear, that if one is to receive a certain proportion of the profits, as one third or one half, *as profits*, he is a partner. If *a certain sum* is agreed to be paid out of profits, and the party does not look to that alone for payment, he is not a partner; but if the *sum to be paid* is not fixed, but may be increased or diminished by the amount or accidents of the business, then the receiver is a partner. [Citing many authorities.] Now, in this case, the proof is, that for the use of his negroes Everitt was to receive, not a stipulated sum, *but one half the net proceeds of the shop.* The amount he was to get was to be paid out of the profits, *as profits*; and the amount

depended upon the business — its amount, management, and accidents.     It would fluctuate according to the whole amount of the net profits — it was one half, after expenses were paid.     There was clearly community — mutuality, as to the profits; he looked to no other source for his hire; he was entitled to an account against Lee, for his interest in the concern." That covers the present case like a blanket.     Changing the names of the parties to the contract, substituting mules and harness for negroes, and work upon the grading of a railroad for work in a blacksmith-shop, we have exactly the case now under consideration.     The case of *Buckner* v. *Lee,* was followed in *Dalton City Co.* v. *Dalton Manufacturing Co.,* 33 *Ga.* 243, where it was held: " Though an agreement between two parties, concerning a particular business in which real estate belonging to one of them is to be used, be denominated ' *a lease,*' and the fruit to the owner of such estate be called '*rent,*' yet if it appears that such fruit is to come *only* from the ' net profits ' of the business, and is not to exceed a certain proportion of them, the parties will in law be regarded as partners."     The *Buckner* case was again followed in *Dalton City Co.* v. *Hawes,* 37 *Ga.* 115.     There the company " leased to Ford their shops, etc., and he agreed to pay them rent for said property, ' for the first year a sum equal to one half of the net profits of Ford's business,' etc.," and it was held " that said company and Ford were partners in said business under said lease."     These decisions have never been overruled, or even questioned, by this court.

It is true that each of those cases involved the consideration of a contract made before the adoption of our first code, in which was embodied the definition of a partnership as to third persons which is now contained in the Civil Code, § 2629.     That definition is as follows:     " A joint interest in the partnership property, or a joint interest in the profits and losses of the business, constitutes a partnership as to third persons.     A common interest in the profits alone does not."     But, in construing this section of the code, this court has held it did not change, but simply declared, the previously existing law.     This being true, the cases above cited are directly in point and, in our opinion, decisive of the question involved in the present case.     While there is an intimation in *Huguley* v. *Morris,* 65 *Ga.* 669, by Chief Justice Jackson, that the code did change the previously existing law upon the subject

of partnership, the question whether it did or did not was not involved in that case; for, as Judge Jackson says: "The partnership was formed in 1859, prior to any Code of Georgia, and to the definition of a partnership as to third persons therein given." So it was immaterial in that case whether the code had changed the law or not. Besides, it was held that it made no difference whether there was a partnership or not, as the party claiming not to be a partner was bound by the acts of his authorized agent. In *Sankey* v. *Columbus Iron Works*, 44 *Ga.* 228, a case cited by both sides in the present case, and which involved the consideration of the provision of the code which we have quoted, Judge McCay (p. 235) said: "We take it for granted that it was not intended by the code to change the well-settled rule upon this subject, to wit: that if parties go into an adventure, one furnishing money or stock and the other skill or labor, and to share the net profits, they are partners, since it follows that in such a case they have a *joint interest* in the profits."

In *Powell* v. *Moore*, 79 *Ga.* 524, it was held that the court below did not err in charging the jury as follows: "If you believe from the evidence that the defendant, Mr. Powell, contributed for the use of Marbut a dwelling-house and a store-house, and also contributed the sum of two hundred dollars, whether it be called a loan or otherwise, and that on the other side Mr. Marbut put in two hundred dollars towards the same business, and devoted his time solely to the attention of that business, and this Mr. Powell looked for compensation to such profits as might be made, whether they be great or small, and that there was no stipulation when he advanced the money, as to the interest he was to receive upon it, or what he should be allowed for the rent, that, gentlemen of the jury, in law would make him a partner of Mr. Marbut in the transaction which you have been investigating." In that case, the rulings made in cases involving contracts made before the adoption of the code were expressly followed. The learned Justice who delivered the opinion, and who is now the Chief Justice of this court, said: "Judge Nisbet, in *Buckner* v. *Lee*, 8 *Ga.* 289, says: 'It is clear that if one receive a certain proportion of the profits, as one third or one half, as profits, he is a partner. If a certain sum is agreed to be paid out of the profits, and the party does not look to that alone for payment, he is not a partner. But if the sum to be paid is not

fixed, but may be increased or diminished by the amount or accidents of the business, then the receiver is a partner.' The same doctrine was held in the case of *Berry* v. *Butt*, by Judge Lumpkin, in 14 *Ga.* 699." He then gives the ruling made in *Dalton City Co.* v. *Dalton Manufacturing Co.*, supra, in which Judge Jenkins delivered the opinion of the court, and quotes the language of Judge McCay in *Sankey* v. *Columbus Iron Works*, construing the above-cited section of the code, and adds: "It will be observed that in the same opinion he says, it was not intended by the code to change the common law upon this subject." He further says: "In *Camp* v. *Montgomery*, 75 *Ga.* 797, Judge Hall, after quoting Parsons on Partnership, where he says that the weight of authority, as well as reason, seems to be decidedly in favor of the rule that there may be a legal and valid partnership, although one or more of the parties are guaranteed by the others against loss, adds: 'And notwithstanding the last clause of section 1890 of our code, that a common interest in the profits alone does not constitute a partnership, the rule seems to be the same in this State.' He adopts the language of McCay in 44 *Ga.*, that the code does not change the well-settled rule upon the subject. It is true that there is an intimation by Judge Jackson, in *Huguley* v. *Morris & Tumlin*, 65 *Ga.* 666, that the code changed the common-law rules upon this subject; but a careful reading of the opinion will show that it was *obiter*, and that the court put the decision of the case upon a different ground." Our learned brother then applied the rulings made in the cases which he had cited and discussed to the case which he had under consideration, in the following language: "These being the rules of law, and the facts of this case being applied to them, they constitute Powell a partner of Marbut as to third persons. The facts show, as already stated, that he contributed the use of two houses and $200 to the business; that no agreement was had as to the amount of the rent or the price of the money; but he was to be repaid by receiving one half the profits, as profits; not as compensation for the use of the houses and money, nor as a measure of the value of them for rent or interest, but as profits in the business of the concern. He had a right to control or dispose of his interest at any time he saw proper. He had a joint title in the profits with Marbut. He could have forced Marbut to account at any time for his share of the profits of the business. These things being so, we

hold that he was a partner as to third persons, and that there was no error in the charge of the court below."

From these decisions, it seems to us that there is no escape from the conclusion that, as to third persons, Conner was a partner of Dunn. If these parties were not to be partners, it is difficult to see why anything should have been said between them as to what each should "put in" the business, or why Conner "agreed with Dunn to put in [his] sixteen mules and harness against [Dunn's] six mules." If Dunn simply hired Conner's mules and harness, why should there have been any discussion or agreement as to what each should put in the business? It seems that Conner's testimony would support a finding that, even as between themselves, they formed a partnership in which Conner put in his sixteen mules and harness against Dunn's six mules and services, and that Dunn was to run the business and guarantee Conner against loss. But, however this may be, we think, for the reasons stated, that, under the law of this State, there was a partnership as to third persons. The mere fact that, under their agreement, Conner was not to be responsible for any debts that might be contracted, but Dunn alone was to assume and pay them, did not make them any the less partners as to third persons. For, as said by Parsons, there may be a legal and valid partnership, although one or more of the parties are guaranteed by the others against loss. The question is, not what they intended by their agreement, but what its legal effect was; and it seems clear to us that under the decision in *Buckner* v. *Lee*, and the subsequent decisions which have cited and followed it, there was, at least as to third persons, a partnership between Dunn and Conner.

We are aware that the trend of modern outside authorities is against the old rule laid down in *Buckner* v. *Lee*, and that now many courts hold that persons are not liable to third persons as partners, although they share in the profits of a business, unless they are really partners inter sese, or have held themselves out as partners under such circumstances as to estop them from denying that they were. 1 Lindley on Partnership, 26; Bates, Part. § 15; Shumaker, Part. 24. For my own part, I wish the law in this State upon the subject of partnership had undergone the change which is pointed out by these authors, so that, even as to third persons, a partnership could not be held to exist, unless there was

really a partnership inter sese, or else the person claimed to be a partner had, by holding himself out as such, estopped himself to deny that he was. This would greatly simplify matters in cases in which the question of partnership or no partnership may arise, and would, it seems to me, place the law in such cases upon a more rational and reasonable basis. But we are bound by the previous decisions of this court which we have cited, which are directly in point, and must follow them so long as they stand unreviewed and unreversed.

Counsel for plaintiff in error cite and rely upon the case of *Sankey* v. *Columbus Iron Works*, supra, in which it was held that if the mill, fixtures, and hands used in a sawmill business were furnished by one person, and another person was employed by him as superintendent only and was to receive one half of the net profits for his services, and had only a common interest in the profits, there was no partnership between the two as to third persons. But we have seen that in that case Judge McCay held that the code had wrought no change in the previously existing law, and, as we have said, this being true, the decision in *Buckner* v. *Lee* is decisive of the question made in the present case. Besides, in the *Sankey* case it was held that if a steam sawmill was furnished by one, and the hands to run it by another, who was also to superintend the work, and the profits were to be equally divided between the two, there was, under the code, a partnership as to third persons. Because, in the language of Judge McCay, "According to this there was a joint interest in the stock, since that was made up of the mill and the hands to work it." In the present case it might, with equal propriety, be said that the stock was, in part, made up of the mules and harness which were "put in" by Conner. We think it would be more accurate, in the former case, to say that the stock was made up of the use of the mill and the services of the hands, and in the present case that the stock was in part made up of the use of the mules and harness contributed by Conner.

The case of *Thornton* v. *McDonald*, 108 *Ga.* 3, is also cited by counsel as being very similar to the one under consideration. In that case it was held: "An agreement to the effect that the owner should furnish 'the mills, the wagons, the mules, and the hands,' and another person owning no interest in the property 'should give the business [his] personal attention in looking after it, and    . .

have for [his] services one half of the profits,' does not constitute such persons partners in operating a sawmill. Such an arrangement creates the relation of employer and employee between them, but does not create a joint interest in the profits." That case, like the case of *Sankey* v. *Columbus Iron Works*, and the recent case of *Padgett* v. *Ford*, 117 *Ga.* 508, recognizes the old and well-established, though somewhat subtile, distinction which existed at common law, between sharing the profits as profits, and receiving as compensation for services rendered a sum measured by a designated proportion of the profits. Thus, Lord Eldon, in Ex parte Hamper, 17 Ves. 412, said: "It is clearly settled, though I regret it, that if a man stipulates that, as a reward of his labor, he shall not have a specific interest in the business, but a given sum of money even in proportion to a given quantum of the profits, that will not make him a partner; but if he agrees for a part of the profits as such, giving him a right to an account, though having no property in the capital, he is, as to third persons, a partner, and in question with third persons no stipulation can protect him from loss." So, Story, quoting Chancellor Kent, says: "There is a distinction between a stipulation for a compensation for labor proportioned to the profits, which does not make a person a partner; and a stipulation for an interest in such profits, which entitles the party to an account as a partner." Story, Part. (7th ed.) § 49.

*Judgment reversed. All the Justices concur.*