### 4032.  HALL & HAM *v.* STONE.

1. Where the owner of a gin-house and machinery turns over to another its management, upon an agreement that the owner is not to share any losses resulting from the operation of the plant, but is to be paid for its use a sum equal to a half of any net profits which may be received, no partnership relation is created, even as to third persons.

2. The evidence was such as to authorize a finding that the presumption

of negligence, which arose against the defendant who operated the gin, upon proof of the destruction by fire of the plaintiff's cotton, had not been rebutted.

DECIDED MAY 22, 1912. REHEARING DENIED JUNE 11, 1912.

Action for damages; from city court of Baxley—Judge Lankford presiding. November 22, 1911.

*W. W. Bennett, V. E. Padgett,* for plaintiffs in error.

*Parker & Highsmith,* contra.

POTTLE, J. The plaintiff delivered a lot of seed cotton to be ginned at a ginnery which he claimed was being operated by the defendants as partners. While stored in the gin the cotton was destroyed by fire, and, in an action sounding in tort, the plaintiff recovered a verdict for its value, against both defendants as partners. The defendants are here upon a bill of exceptions complaining of the overruling of their motion for a new trial. The motion contains many grounds, but, under our view of the law, there are two controlling questions: (1) Were the defendants partners? (2) Was the plaintiff entitled, under the evidence, to recover?

1. The evidence in reference to the existence or non-existence of a partnership between the defendants is not conflicting, and the facts may be gathered from the following testimony of the defendant Hall: "I had nothing at all to do with the running of that ginnery. I owned the gin. Ham run it. I had no connection with the management of this gin. I had nothing to do with employing the hands or paying them. If Mr. Ham made anything, he was to give me one half of what he made out of it. Mr. Ham was to pay the debts for the running of it. If he didn't make anything, I didn't get anything. I wasn't to pay anything at all. I was to pay no expenses of the gin at all." In brief, Hall owned a gin and Ham undertook to operate it. If profit was made, Hall got half, but he was to sustain no part of any loss which the operation of the ginnery might entail. Under these facts, did the trial judge correctly apply the law in holding that Hall and Ham were partners as to the plaintiff?

The code declares (Civil Code of 1910, § 3158): "A joint interest in the partnership property, or a joint interest in the profits and losses of the business, constitutes a partnership as to third persons. A common interest in profits alone does not." By the plain letter of this statute there would seem to be no partnership relation between the defendants, for it is undisputed that Hall was

not to share in the losses. But it is said that as Ham contributed to the enterprise all the labor, and supplied whatever expenses were necessary, he became jointly interested with Hall, the owner of the property, to such an extent as to make them partners as to third persons. It is, however, settled, by decisions of the Supreme Court, that the ordinary arrangement between a landlord and a cropper does not create the partnership relation, even as to third persons, though the cropper is to furnish all the labor, and receive half the net profits after paying the expense of making the crop. *Gurr* v. *Martin,* 73 *Ga.* 528; *DeLoach* v. *Delk,* 119 *Ga.* 884 (47 S. E. 204). This is the exact situation here, and these decisions are, in principle, controlling. In *Dawson National Bank* v. *Ward,* 120 *Ga.* 861 (48 S. E. 313), it appeared that Ward owned a warehouse and placed Gurr in charge to manage it, under an agreement to divide the profits. They were sued as partners, and the court held: "A contract whereby one conducting a cotton-warehouse business in his own name and on his own account agrees with another that the latter shall attend personally to the business, and receive as compensation for his services a given proportion of the net profits, does not create a partnership. The proportion of profits given to him who attends to the business without having an interest in the same is merely the measure of wages for the service rendered." See, also, the recent case of *Cowart* v. *Fender,* 137 *Ga.* 586 (73 S. E. 822).

The defendant in error relies upon *Brandon* v. *Conner,* 117 *Ga.* 759 (45 S. E. 371, 63 L. R. A. 260), but in that case it appeared that each of the persons contributed property to the common enterprise, and this distinction is pointed out in *Dawson National Bank* v. *Ward,* supra. The decision in the *Brandon* case, supra, is apparently somewhat of a departure from the letter of the statute, and the subsequent decisions of the Supreme Court indicate an unwillingness to extend that decision so as to cover a case like the present. The real meaning and intent of the contract between Hall and Ham was that Ham should have the use of Hall's gin, and pay Hall, as compensation for such use, a sum to be measured by one half of whatever profits flowed from the enterprise. So construing it, it is clear to our minds that they were not partners; and, as there was nothing in the evidence to indicate that Hall had done or said anything to estop him to deny the partnership re-

lation, a verdict should have been directed in his favor, upon his plea of no partnership.

2. We are of opinion, however, that the verdict was warranted against Ham. "In all cases of bailment, after proof of loss, the burden is on the bailee to show proper diligence." Civil Code (1910), § 3469. "All bailees are required to exercise care and diligence in protecting and keeping safely the thing bailed. Different degrees of diligence are required, according to the nature of the bailments." Civil Code (1910), § 3470. Fire was discovered in the gin about 2 o'clock in the afternoon, and was apparently extinguished. Indeed, the plaintiff himself, during the course of the afternoon, brought several hundred pounds of cotton and stored them in the gin-house. Stone himself testified: "The last time I went in there that afternoon before Mr. Ham closed up was just before night. I was vitally interested in that fire and cotton. I looked pretty well for fire. I looked everywhere I thought there could be any fire. I tried to see that it was out. Any man with that much money at stake would have done the same thing." Ham remained in and about the house until about 10 o'clock at night, when he went home without leaving any one at the gin to watch for fire. The testimony indicates that before going he made the most careful examination for fire, and reached the conclusion that it had been extinguished. The gin-house was burned about midnight and the plaintiff's cotton destroyed. Under the evidence the jury might well have found that Ham had rebutted the presumption of negligence arising against him from proof of the loss of the cotton; but we are not prepared to say that they were bound to do so. The degree of diligence varies with the nature of the bailment, and questions of negligence and diligence are peculiarly for the jury. Cotton is inflammable, and the well-known fact that a hidden spark may smoulder for hours, and sometimes even for days, before developing into a flame, authorized the jury to find that Ham was lacking in the degree of diligence which the nature of the bailment required, in leaving the house without a watchman, even though he in good faith believed the fire had been extinguished. While it does not affirmatively appear that the destruction of the house was the result of a continuation of the fire which began in the afternoon, the jury were authorized to infer that this was the case. We would not set aside

the verdict upon the ground that it is unsupported by any evidence. See *Netzow Mfg. Co. v. Sou. Ry. Co., 7 Ga. App.* 163 (66 S. E. 399) ; *Atlantic Compress Co. v. Central Ry. Co.,* 135 *Ga.* 140 (68 S. E. 1028).

3. With the exception of the ruling upon the question of partnership, we find no material error in the record. The law of hiring, as embraced in § ˙3476 et seq. of the Civil Code (1910), has no application to the case.                    *Judgment reversed.*