### 14145. CLEGG *v.* LYONS, HARRIS & BROOKS.

Whether or not the assignments of error on the refusal of the court to admit certain oral evidence, seeking to explain the written alleged partnership contract as no more than a sales agent's agreement, may be considered, under a strict application of the rules with reference to setting forth more particularly the name of the witness actually offered and sworn, the questions asked and answers expected, the objections passed upon, or that the court excluded the evidence on its own motion (*Allen* v. *Kessler*, 120 *Ga.* 319, 47 S. E. 900; *Smith* v. *Leverett*, 22 *Ga. App.* 289, 290, 96 S. E. 8; *Cathey* v. *State*, 28 *Ga. App.* 666, 667 (8), 112 S. E. 915, *Devoe* v. *Best Motor Co.*, 27 *Ga. App.* 619 (1) 109 S. E. 689; *McKenzie* v. *State*, 27 *Ga. App.* 794 (2), 110 S. E. 247; *Long* v. *Farmers Hardware Co.*, 27 *Ga. App.* 659, 110 S. E. 422), it appears that such of the proffered testimony as was not merely conclusions of law for the jury to determine from the facts was in conflict with the express stipulations of the written contract and contravened the parol-evidence rule. Moreover, even had such evidence as was not conclusions been admitted, the presumptions and legal effect arising from the expressed terms of the instrument could not have been thereby overcome.

DECIDED JUNE 25, 1923.

Complaint; from Bibb superior court — M. D. Jones. November 9, 1922.

The plaintiff in error was sued on open account, as a member of a partnership, together with the other alleged partners. He filed a plea of no partnership. In the trial the plaintiffs proved the debt, and that it was contracted after the execution of a written contract signed by the parties, as follows:

"*Contract for services between Mercantile Sales Company of Macon, Georgia, and P. C. Clegg, of Cordele, Georgia.*

"Georgia, Bibb County. This agreement, entered into this the 10th day of February, 1922, between E. G. Benford and L. P. Coe, trading as the Mercantile Sales Company, of Macon, Georgia,

hereinafter referred to as the parties of the first part, and P. C. Clegg, of Cordele, Georgia, hereinafter referred to as party of the second part, witnesseth: The parties of the first part hereby acknowledge receipt of five hundred dollars ($500) in cash and a note for five hundred dollars ($500) payable April 15, 1922, for which they hereby convey to the party of the second a one-tenth interest in the business operated by them and known as the Mercantile Sales Company, such interest entitling party of the second part to one tenth of the net earnings of said business. The parties of the first part further agree to pay the party of the second part ten per cent. of the sales price of all business which he secures, such business to consist of contracts for the conducting of special sales and the selling of material for such sales, such commission to become due and payable upon collection of amount of contract from customer; the parties of the first part further agree to allow the party of the second part to draw $75.00 weekly against his commissions, such drafts to be charged to him and deducted at time of payment of commissions. The party of the second part agrees to devote his entire time to the development of the business of the parties of the first, selling their services in such territory as may be assigned him by them; that he will conscientiously endeavor to promote the business of the parties of the first part in every possible way, and will perform any such duties as may be required of him by them, and that he will give thirty-days notice previous to leaving their employ. The parties to this agreement jointly agree that at any time either becomes dissatisfied with arrangement, that this agreement may be dissolved and terminated by thirty-days notice by either party, be canceled and dissolved upon thirty-days notice by either party, and that in the event of such termination of this agreement, the parties of the first part agree to repay to the party of the second part all cash money he has invested in the business, with any profits accrued thereupon, and to return to him any outstanding notes given in payment for an interest in the business. This contract to be signed in duplicate, either copy being considered as the original.

"In witness whereof we hereunto set our hands and seals, this the tenth day of February, 1922."

(Signed by E. G. Benford and L. P. Coe, trading as Mercantile

Sales Company, parties of the first part, and P. C. Clegg, party of the second part.)

The defendant contends that this did not constitute a contract of partnership, and that the court erred in excluding parol proof which he tendered, and in directing a verdict for the plaintiffs. The assignment of error recites as follows: "Defendant contended that the contract was not one of partnership, that it was ambiguous, and offered to prove that the real intention of the parties to the contract was that defendant Clegg, in consideration of receiving a drawing account of $75 per week, besides commissions and profits, was to lend the Mercantile Sales Company $1,000, which he could get back upon thirty-days notice, and that it was not intended for him to become a partner in the business known as Mercantile Sales Company, but that he was in effect only a sales representative. Defendant further offered to prove that he did not have or exercise any control over the assets of the partnership, and never received any benefit under the contract. The court refused to admit the testimony offered, and held that the contract created the relation of partners between the defendants Benford, Coe, and Clegg, and directed a verdict in favor of plaintiffs against defendant Clegg."

*Miller & Garrett,* for plaintiff in error.

*Brock, Sparks & Russell,* contra.

JENKINS, P. J. (After stating the foregoing facts.) While the partnership agreement provides for certain services to be rendered by the defendant to the partnership, for which he is to receive a specified commission, and while it provides the terms and method for a possible dissolution, it expressly provides for the purchase by the defendant of a specified interest in the partnership business, and that he shall share pro rata in the net profits of the enterprise, independently of the provision made for his personal services. The provision referred to is as follows: "The parties of the first part hereby acknowledge receipt of five hundred dollars ($500) in cash and a note for five hundred dollars ($500) payable April 15, 1922, for which they hereby convey to the party of the second a one-tenth interest in the business operated by them and known as the Mercantile Sales Company, such interest entitling party of the second part to one tenth of the net earnings of said business." Nothing is said with reference to losses.

Section 3158 of Park's Code provides as follows: "A joint interest in the partnership property, or joint interest in the profits and losses of the business, constitutes a partnership as to third persons. A common interest in profits alone does not." It is expressly held, however, by a long line of decisions of the Supreme Court, that it was not intended by the adoption of the code to change the rule of the common law upon this subject, but that the language of the code must be taken and construed as declaratory only. *Dalton City Co.* v. *Dalton Mfg. Co.*, 33 *Ga.* 243; *Sankey* v. *Columbus Iron Works*, 44 *Ga.* 228; *Powell* v. *Moore*, 79 *Ga.* 524, 529 (4 S. E. 383). The contrary intimation in *Huguley* v. *Morris*, 65 *Ga.* 666, is disapproved, as obiter, in *Brandon* v. *Conner*, 117 *Ga.* 759, 764 (45 S. E. 371, 63 L. R. A. 260), where the original rule as laid down in *Buckner* v. *Lee*, 8 *Ga.* 285, is reasserted. The *Brandon* case was reviewed and expressly approved in *Callaway* v. *Waxelbaum Co.*, 128 *Ga.* 508 (57 S. E. 762). A definition by Judge Story, quoted by Justice Lumpkin in *Floyd* v. *Kicklighter*, 139 *Ga.* 133, 136 (76 S. E. 1011), is as follows: "Partnership, often called copartnership, is usually defined to be a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them." What has often been referred to as a subtle and metaphysical distinction has been recognized in many cases where the proportion of profits goes to one of the parties to the agreement, not as *profits*, but merely as compensation for labor or benefits furnished to his employer. Such an agreement does not have the effect of clothing the employee with the rights, powers, duties, and responsibilities of a partner. Judge Nisbet, in the *Buckner* case, supra, said: "'The true distinction (says Mr. Story) by which we are to distinguish cases of this kind from cases in which there is a partnership as to third persons is to ascertain whether the retiring partner, lender or annuitant is to receive a share of the profits *as profits*, or whether the profits are relied on only as a fund of payment; or in other words, whether the profits, or premium, or annuity, is certain and defined, or is casual, indefinite and depending on the accidents of trade. In the former case it is a loan — in the latter a partnership.' Story on Part. § 67. Grace *v.* Smith, 2 W.

Black. R. 998, 1,000. Waugh *v.* Caurs, 2 H. Black. R. 235 to 247. And again, ' in short, in all cases of this kind, the real question to be solved is, whether the party is, in effect, to participate in the rise or fall of the profits as such, or whether he only looks to the profits as a fund for payment of the annuity, but not exclusively to that fund. In the former case he is a partner — in the latter he is not.' Story on Part., § 69. 'The test of partnership is a community of profit — a specific interest in the profits *as profits,* in contradistinction to a stipulated portion of the profits as a compensation.' 3 Kent, 25. To which I add, in contradistinction, also, to a stipulated portion of the profits, as an annuity; that is, an annual sum for the use of money, or of negroes, or other property. It seems, then, clear that if one is to receive a certain proportion of the profits, as one third or one half, as profits, he is a partner. If a certain sum is agreed to be paid out of profits, and the party does not look to that alone for payment, he is not a partner; but if the sum to be paid is not fixed, but may be increased or diminished by the amount or accidents of the business, then the receiver is a partner." (8 *Ga.* 288).

Following this *Buckner* case, it was held in the *Brandon* case, supra, that, " Where A, who had a contract to grade a portion of a railroad, made a contract with B, by the terms of which B was to ' put in ' sixteen mules and harness against A's six mules and his services, and to receive one-half of the net profits of the business for the use of his mules and harness, there was a partnership between them as to third persons, although they agreed that B was to have nothing to do with the work and was not to be responsible for any debts." This rule was reiterated in *Callaway* v. *Waxelbaum,* supra, where, as already stated, the decisions in the *Brandon* case and the *Buckner* case were, upon review, adhered to. See also *Walls* v. *Atlanta Newspaper Union,* 141 *Ga.* 594 (3) (81 S. E. 866).

What the text-books speak of as the confusion and conflict in the decisions upon this question seems to grow out of the interpretation which the courts give to the particular agreement under consideration, with reference to whether the share of profits is intended to go *as profits,* so as to clothe the recipient with all the rights, powers, and responsibilities of a partner, or whether the proportion of profits is to be received merely by way of compensa-

tion.  Under the Georgia decisions, if a definite proportion of indefinite profits is to be received as such, and not merely as compensation for services, this will render the person so receiving it a partner.  In the *Brandon* case it was recognized that this, the original rule, is contrary to the modern trend.  While in *Davis* v. *Savannah Lumber Co.,* 11 *Ga. App.* 610 (4) (75 S. E. 986), it was held that, "while liability for losses will generally be implied from proof that the contract stipulated for a division of the profits, and a sharing of the profits may imply a partnership, still the existence of a partnership is not to be implied where it appears indisputably from the proof that there was not a common liability for losses," it appears from an examination of the Georgia cases that in most, if not all, of them, where the relation of partnership was upheld under an agreement providing for the sharing of profits, but silent as to losses, the assets of the enterprise had been jointly contributed; but it is not intended by this statement to thus absolutely limit the possibility of parties entering upon a partnership agreement where it is their plain intention that the profits shall be received as such and not merely as compensation for services.  It was clearly recognized in *Sankey* v. *Columbus Iron Works,* supra, that a partnership existed where there was a joint contribution to the stock of the enterprise; that is, where each of the partners was to furnish a portion of what was necessary to operate it.  If, however, as there recognized, one of the parties furnished everything necessary to the conduct of the business, and the other party, in consideration of a stated proportion of the profits, was merely to sell his personal services, then there would be no partnership.  This was clearly the controlling principle in the rulings made by the Supreme Court in *Thornton* v. *McDonald,* 108 *Ga.* 3 (33 S. E. 680), and in *Dawson National Bank* v. *Ward,* 120 *Ga.* 861 (43 S. E. 313) ; also in *Hall* v. *Stone,* 11 *Ga. App.* 269 (75 S. E. 140), as will appear from language used on page 271.  In the instant case, not only is there no limitation upon the generally implied liability for losses on the part of the defendant, but under the terms of the agreement he is to share in the net profits of the business independently of his special compensation for services; and finally, having contributed a portion of the joint stock of the enterprise, he is clothed with all the rights, powers, and responsibilities of a partner.

*Judgment affirmed.  Stephens and Bell, JJ., concur.*