## ATLANTIC COMPRESS COMPANY *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

A compress company, in possession of a certain number of bales of cotton belonging to another, issued to the latter a receipt acknowledging receipt of the cotton "to be compressed and loaded for Central of Georgia. Subject to all the conditions of bill of lading of above-named carrier [a railway company] which may be issued in exchange for this receipt." "The form of the bill of lading alluded to in such receipt was well known" to the party receiving the receipt. The owner of the cotton obtained from the railway company in exchange for the receipt a bill of lading, one of the conditions of which was, "No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto, by . . fire." For compressing and loading the cotton the railway company was to pay the compress company. Before the cotton was compressed and loaded, it was destroyed by fire while in possession of the railway company through its agent, the compress company. The freight was prepaid by the owner of the cotton. The railway company paid the owner the value of the cotton destroyed, and, to recover the amount thus paid, sued the compress company on a contract of the latter to indemnify the former against any liability to the owner of cotton lost or damaged after it was received by the compress company for compressing and before it was loaded by the compress company for shipment. *Held:*

1. There was no express contract between the owner of the cotton and the railway company respecting the condition in the bill of lading wherein the latter was to be exempted from liability on account of the loss of the cotton by fire, and such condition was not binding on the owner.

2. Proof of loss of the cotton by fire and payment to the owner by the railway company for the value of the cotton made a prima facie case of liability of the compress company to the railway company on the indemnity contract between them.

SEPTEMBER 23, 1910.

Complaint. Before Judge Charlton. Chatham superior court. August 4, 1909.

*King & Spalding* and *E. M. Underwood,* for plaintiff in error.
*Lawton & Cunningham* and *H. W. Johnson,* contra.

HOLDEN, J. .The Central of Georgia Railway Company (hereinafter called the plaintiff) sued the Atlantic Compress Company (hereinafter called the defendant) on an indemnity contract, wherein the latter agreed to indemnify the former against any liability to the owner of cotton lost or damaged after it was received by the compress company for compressing and before it was loaded by the compress company for shipment. 125 bales of cotton received by the defendant from the owner, to be compressed and loaded for the plaintiff, were destroyed by fire after a bill of lading was issued to the owner by the plaintiff in exchange for the receipt given the owner by the defendant, and while it was in the possession of the defendant as the agent of the plaintiff and before it had been compressed. The plaintiff paid the owner the value of the cotton, and sued the defendant to recover the amount thus paid. The case was submitted to the judge on an agreed statement of facts, and to his judgment in favor of the plaintiff for the full amount for which suit was brought the defendant excepted.

1. The defendant contends that the owner of the cotton made an express contract whereby the plaintiff was exempted from liability to the owner for loss of the cotton by fire. The plaintiff makes the contrary contention. Unless the plaintiff was in law liable to pay the owner of the cotton on account of its destruction, the defendant would not be liable to reimburse the plaintiff for the amount so paid by the latter. Civil Code, § 2276, is as follows: "A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and will then be governed thereby." Counsel have argued the case on the theory that the

receipt of the compress company was given on its own account, and also on the opposing theory that it was given as agent of the railway company. In considering the question whether the conditions in the bill of lading created an exemption from liability in the event the cotton was destroyed by fire, let us first consider the receipt as having been issued by the defendant on its own account and not as agent for the plaintiff. The bill of lading issued by the plaintiff had in it this condition: "No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto, by . . fire," etc. The words "party in possession" are broad enough to cover the compress company, which, as agent of the railway company, was in actual possession of the cotton when it was destroyed by fire. The receipt of the compress company acknowledged receipt of the cotton from the shipper, "to be compressed and loaded for Central of Georgia. Subject to all the conditions of bill of lading of above-named carrier, which may be issued in exchange for this receipt." Treating the receipt as that of the compress company on its own account, and assuming that the bill of lading became a part of the agreement between the compress company and the shipper, or that the receipt was given subject to conditions of bill of lading that might be issued in exchange for it, or that the cotton was to be compressed and loaded subject to such conditions, one of which was that *any party* other than the railway company in possession of the property would not be liable for its loss by fire, the meaning of the receipt would be that should the cotton be lost by fire in the possession of the compress company after the receipt was given and bill of lading issued, the compress company would not be liable therefor to the shipper. If the receipt be treated in this way and given the effect and meaning above referred to, no violence would be done to the provisions of the Civil Code, § 2264, as the provision therein contained, that the common-law liability of a common carrier shall not be limited by any notice given, etc., but in order to do so there must be an express contract, only applies to common carriers, and the compress company is not a common carrier. The condition in a writing issued by the compress company, or in another writing made a part thereof, that the one to whom the writing was delivered would not hold the company liable for losses by fire, might be binding on such person when it would not

be binding if issued by a common carrier. If it is proper to treat the receipt in this way, and give it the meaning that the compress company was not to be liable to the shipper if the cotton was lost by fire before it reached its destination, this fact alone would not relieve the railway company from liability if the cotton was destroyed by fire. The railway company would not be relieved of liability to the shipper for loss of the cotton by fire while in its possession because the shipper had bound himself, with the knowledge of the railway company, not to hold another liable for the loss of the cotton by fire while in the possession of the railway company. The railway company could not properly say to the shipper, "You should not hold me liable, because you have agreed not to hold another liable." The railway company is not seeking to hold the compress company liable because of negligence of the latter, but on its indemnity contract with the railway company, to which the shipper was no party, and, as far as disclosed by the record, never knew there was such a contract. What has just been said is on the theory that the receipt of the compress company was one given by it on its own account, not as an agent of the railway company. If the receipt be dealt with on the theory that the railway company was no party to it, and as plainly evidencing a contract by the shipper not to hold the compress company liable for loss of the cotton by fire occurring at any time before delivery at its destination, we do not think this fact would be sufficient to show that there was an express contract by the shipper that the railway company would be likewise relieved of liability, although the receipt was delivered to the railway company in exchange for a bill of lading and it was contemplated by the parties when the receipt was given that this should be done.

Nor would the facts in the record warrant the conclusion that there was an express contract regarding the exemption of the railway company from liability if the cotton was lost by fire, if the compress company's receipt be treated as having been given by that company as an agent for the railway company. On this theory, it would simply be an exchange of the receipt of one agent of the railway company for a bill of lading from another agent. The main office of the receipt of the compress company, on this theory, would be to evidence from one agent of the railway company the number of bales of cotton for which the other agent of

the railway company should give a bill of lading in exchange. While the receipt of the compress company and the bill of lading issued to the shipper were on forms in general use between shippers and the parties, it does not appear that the attention of the shipper was especially directed to the particular statements in them and gave his assent thereto, and neither the receipt nor the bill of lading was signed by the shipper. The mere fact that the receipt stated that the cotton was to be compressed and loaded, or that the receipt was given "subject to all the conditions of bill of lading" of the carrier, could not alone make the condition in the bill of lading a subject-matter of express contract, as every bill of lading issued and accepted by a shipper is for a shipment subject to the conditions in the bill of lading, except that the limitations on the common-law liability of the carrier are not binding unless made the subject of an express contract. Treating the receipt as that of the compress company as agent of the railway company, the statement in it is but a notice given and an entry on a receipt undertaking to do what the statute says can not be done, to wit, limit its legal liability. The fact that one agent of a common carrier, in giving a receipt for goods to be transported by the carrier and to be exchanged for a bill of lading, enters a notice or makes an entry which of itself, or taken in connection with the bill of lading to be issued in exchange for it, limits the legal liability of the carrier, is without effect so far as the shipper is concerned, unless he makes an express contract with reference to such condition.

The question of whether or not a bill of lading evidences a special contract between the carrier and the shipper, within the provisions of the Civil Code, § 2276, so as to make valid a limitation on the legal liability of the carrier contained in the bill of lading, is not determined by the fact that the shipment is tendered by the shipper, and received by the carrier, subject generally to the conditions of the bill of lading which the carrier issues. Every shipment for which a bill of lading is issued to the shipper is subject to the legal conditions of the bill of lading which constitutes the contract of carriage, as well as a receipt for the goods, and the recipient of the bill of lading impliedly agrees thereto. But a shipment being governed by the ordinary legal conditions of a bill of lading is one thing; and an express assent by the shipper to a

stipulation therein which limits the legal liability of the carrier, so as to make such a condition valid against the shipper when it otherwise would not be, is another and a different proposition. To give rise to the latter so as to bind the shipper, there must be an express assent on his part to the stipulation itself—he must evidence in some way an intention to be bound thereby. We do not see that the mere exchange of a receipt prepared by another for the carrier's bill of lading, although the shipper may be advised as to the form of the bill of lading customarily issued by the carrier in such instances, and although the receipt may contain the statement, "Subject to all the conditions of bill of lading of above-named carrier, which may be issued in exchange for this receipt," is an act on the part of the shipper showing an express assent by him to a stipulation in such bill of lading whereby the carrier undertakes to limit his legal liability. And we think the result is the same whether the receipt thus exchanged by the shipper be one given him by a third person who holds the goods as his bailee, or by an agent of the carrier (other than the one issuing the bill of lading) who holds them for the carrier. Under such circumstances, the receipt is primarily intended as an evidence of the shipper's right to the possession of the goods which are in the hands of another, and its exchange with the carrier for a bill of lading effects a surrender of the right of possession to the carrier, as a common carrier, for shipment, and no more affects the contract of carriage expressed in the terms of the bill of lading than would a physical delivery of the goods themselves and the taking of a similar bill of lading where no receipt had been previously issued therefor. One transaction calls no more attention to a limitation of liability than the other; for, as above stated, a shipment for which a bill of lading is given is subject to the general conditions of shipment and requirements of the bill of lading, and the shipper adds nothing to his implied acceptance of its terms by stating generally that he accepts it subject to its conditions. In neither of the instances above outlined are the facts such as to denote an express assent on the part of the shipper to limitations on the liability of the carrier which the law treats as invalid in the absence of an express contract with respect thereto. The fact that the form of the bill of lading alluded to in the receipt was well known to the parties, and that the shippers themselves frequently filled out these forms

10

and tendered them to the carriers for signature, and it was contemplated by all the parties that the railway company would so issue its bill of lading in lieu of the compress company's receipt, would not make the condition in the bill of lading an express contract between the shipper and the railway company.

The agreed statement of the facts recites: "The rate of freight named in the bills of lading was the rate fixed by the railroad commission of Georgia, in effect at the time. . . The classification of the railroad commission of Georgia contains only the one set of rates on cotton in bales, and does not contain any other set of rates on cotton in bales as under 'owner's risk.' " It appears from the record that the rate charged the shipper by the railway company was the maximum rate for a shipment of bales of cotton, and no reduced rate was given the shipper in this matter. The record does not show that the shipper got any reduced rate because the cotton was to be compressed, or that the carrier could or would have refused to carry it if it had not been compressed.

2. The cotton was burned after the bill of lading was issued by the railway company, and the agreed statement of facts shows that the cotton was destroyed "while in the possession of the Atlantic Compress Company as agent of the railway company, under the provisions of the contract between the two latter." It will be seen that the railway company, through its agent, the compress company, was in possession of the cotton when it was destroyed, after the railway company had issued its bill of lading to the shipper. Nothing remained to be done by the shipper before the cotton was to be transported. The record shows that the freight had been prepaid. There was no duty on the shipper to have the cotton compressed and loaded for shipment. The receipt of the compress company stated that it had received from the owner a specified number of bales of cotton "to be compressed and loaded for Central of Georgia." When this receipt was given the cotton was in the possession of the compress company, subject to whatever disposition the owner saw fit to make of it. The compressing and loading was to be done by the railway company through its agents, the compress company, and under the contract between the two companies the former was to pay the latter for this work. The contract has in it the following statement: "Whereas, during the cotton season of 1905-1906, the railway company will accept un-

compressed cotton for through transportation, but, for convenience in forwarding same, desires that a portion thereof shall be compressed at said compresses of the compress company. . . That, as and when requested by the railway company so to do, it will promptly receive and receipt for, unload from cars or wagons, shelter when practicable, compress and load on cars in the order of its receipt, or as may be otherwise instructed by the railway company, all cotton of such dimensions as to make it practicable to compress it to a density as hereinbelow specified, intended for shipment over the lines of the railway company and its connections and tendered to the compress company for that purpose by the railway company or by shippers, and for such cotton as is so tendered by shippers it will issue to shippers tendering same one single certificate only covering each lot of cotton designated by one mark." When the cotton was destroyed, it was exclusively in the possession of the railway company, through its agent, the compress company, with nothing to be done by the shipper before it was transported by the railway company, and the latter held it at the time of its destruction in its capacity as a common carrier, and its liability as a common carrier had accrued. When it was shown that the cotton was destroyed after the liability of the railway company as a common carrier had accrued, the presumption was that the carrier was liable to the shipper on account of the loss of the cotton. The record does not show anything to rebut this presumption. Civil Code, § 2896, is as follows: "In all cases of bailment, after proof of loss, the burden of proof is on the bailee to show proper diligence." The record shows that the cotton at the time of its destruction by fire was in the actual possession of the compress company as bailee of the railway company. The carrier was suing the compress company to recover from it, by virtue of the contract of indemnity existing between them, the amount the carrier had paid the shipper to make good the loss of the cotton. To authorize the recovery, it was only essential to show that in paying the shipper it had discharged a legal liability. It made a prima facie showing of liability on its part to the owner, and on the part of the defendant to the plaintiff on the indemnity contract, when it was proved that the cotton in the custody of the defendant as agent of the plaintiff, the latter having such possession as a common carrier, was destroyed; and nothing appearing in the record

to rebut the presumption of liability which the law raises under this state of facts, the court was authorized to render judgment holding the defendant liable to reimburse the plaintiff.

. *Judgment affirmed. All the Justices concur.*