# SEABOARD AIR-LINE RAILWAY *v.* ATLANTIC COMPRESS COMPANY.

1. A railway company brought suit against a compress company, and alleged as follows: Defendant entered into a contract with plaintiff, providing for the compressing and loading on cars of cotton during a certain season, the insuring of it for the benefit of the plaintiff, and the indemnifying of the railway company against all loss or damage to cotton between the time of the delivery of it to the compress company by shippers or by the railway company and the time of loading on cars and notifying the railway company. The compress company issued to an owner of cotton in its possession a receipt for such cotton "to be compressed and loaded for Seaboard [the railway company] subject to all the conditions of bill of lading of above-named carrier, which may be issued in exchange for this receipt." The railway company issued a bill of lading to the shipper. While in the compress, a part of the cotton was destroyed by fire. This was not discovered by the plaintiff until the rest had been carried to its point of destination on the railroad, where it was to be delivered to a steamship. The railway company reimbursed the owner, and brought this suit against the compress company on the contract of indemnity. *Held,* that the petition sufficiently alleged a delivery of the cotton by the shipper to the carrier or its agent to withstand a general demurrer; and it was not subject to be dismissed on demurrer on the ground that it showed that there had been no delivery to the carrier and that no liability by it to the shipper had arisen.

2. The inclusion in the receipt given by the compress company to the owner of the cotton of a provision that it was "subject to all the conditions of bill of lading of above-named carrier, which may be issued in exchange for this receipt," and the existence in the printed conditions on the back of the bill of lading of a statement that "No carrier or party in possession of all or any of the cotton hereby described shall be liable for any loss therefor or damage thereto by . . fire," did not constitute such an express contract between the shipper and carrier as to relieve the latter from liability for loss occurring by fire, under the Civil Code of 1895, § 2276.

3. It was error to dismiss the petition on general demurrer.

NOVEMBER 19, 1910.

Complaint. Before Judge Ellis. Fulton superior court. August 28,. 1909.

On September 1, 1905, the Atlantic Compress Company and the Seaboard Air-Line Railway entered into a written contract which contained the following, among other provisions: "Whereas, during the cotton season of 1905-1906, the railway company will accept uncompressed cotton for through transportation, but, for convenience in forwarding the same, desires that a portion thereof shall be compressed at said compress of the compress company, now, therefore, this agreement witnesseth: That the Compress Company . . hereby covenants and agrees . . that, as and when requested by the railway company so to do, [it] will promptly receive and receipt for, unload from cars or wagons, shelter when practicable, compress and load on cars in the order of its receipt, or as may be otherwise instructed by the railway company, all cotton of such dimensions as to make it practicable to compress it to a density as hereinbelow specified, intended for shipment over the lines of the railway company and its connections and tendered to the compress company for that purpose by the railway company or by shippers, and for such cotton as is so tendered by shippers it will issue to shippers tendering same one single certificate only covering each lot of cotton designated by one mark. . . That it will load not less than fifty bales of compressed cotton in any standard car of thirty four (34) feet in length, excepting remnants, and when loading is completed will cause doors of cars to be closed, sealed, and stripped in a proper manner (doors closing tight into the sides of a car properly fastened and sealed need no strips), and thereafter will promptly furnish unto the railway company an accurate statement of all cotton loaded in each and every car. That it will indemnify and save harmless the railway company against any and all claims, demands, suits, judgments, and sums of money accruing to any person against the railway company for loss or damage to cotton so tendered to, compressed by, or loaded by the compress company, howsoever such loss or damage may result, if the same accrued between the time of delivery of such cotton unto the compress company by shippers or by the railway company, or the time when the railway company shall have placed cars of uncompressed cotton in position for unloading at the compress and fur-

nished the compress company with way-bills, abstracts, or other memoranda, per advice, showing that the cars have been placed in position for such unloading, and the time when the same has been loaded or reloaded in cars and the railway company notified that the cotton has been so loaded or reloaded, or until the railway company shall have been in default for forty-eight (48) hours in furnishing cars therefor, as hereinafter provided; such indemnity to be effective at whatsoever time such loss or damage may be discovered; and to that end hereby specifically assumes all responsibility for the proper handling, storing, and protection of such cotton while in its possession as hereinbefore provided, and agrees that the count made by the railway company or its connections of the number of bales of cotton loaded in any car under the seals of the compress company, at the points where such seals are broken, shall be final and conclusive as between the parties hereto, for the purpose of this agreement, as to the number of bales of cotton loaded in said car, such count to be promptly and carefully made, and in case of discrepancies to be rechecked and differences reported to the compress company. That it will keep all cotton tendered to it, as hereinbefore provided, fully insured, under insurance policies satisfactory to the railway companies for whose account insured, and file with each railway company a copy of such policy; and the railway company will reimburse it for the additional premiums of insurance accruing on such cotton, after forty-eight (48) hours written application by the compress company upon the railway company for cars in which to load it. . . The compress company shall, when requested, furnish to each interested railway a certified statement of the number of bales of cotton held for account of said railway, and also a certified statement of the aggregate number of bales of cotton held in the press for account of all interested railways. . . The railway company shall have access to the records of the compress company, to enable the railway company to make a complete check of the cotton handled by the compress company for the railway company. The compress company guarantees that all receipts, loading tickets, or similar documents issued by it, or by any one in its employ authorized to issue the same, are genuine and represent cotton actually delivered to and in the possession of the compress company, and that each and every bale specified in the compress re-

ceipts, loading tickets, or similar documents is a merchantable bale, so far as weight is concerned, except as noted thereon; and the compress company ,covenants to hold the railway company harmless against all loss, damage, or expense which the railway company may incur or be put to from non-delivery by the compress company to the railway company of the cotton covered by such receipts, loading tickets, or similar documents. That the compress company will, when requested by the railway company, act as the agent of the railway company for the delivery of cotton destined locally to the compress points, assuming responsibility for the correct delivery of such cotton to the owner, and, whenever such shipments shall be consigned to 'order notify,' will make delivery only after sufficient evidence has been furnished to it that the original bill of lading has been surrendered to the railway company therefor, and will keep the same fully covered by fire-insurance for forty-eight (48) hours after the delivery into the compress, upon the payment by the railway company to the compress company of an insurance premium of two cents per bale; . . Provided, however, that when the railway company shall issue its bill of lading for compressed cotton to be delivered to it for shipment at the compress of the compress company, then the compress company shall look to the shipper of such cotton for its charges, and not to the railway company. That it will furnish upon the tracks used by the compress company in loading cotton for account of the railway company, as and when required and within reasonable time after notice of such requirement, such cars as may be necessary for the loading and shipment of such cotton as may be compressed for account of the railway company," etc.

The railway company brought suit against the compress company, and alleged, in brief, as follows: On November 14, 1905, Inman & Company, who were shippers over the plaintiff's line of railway, delivered to the defendant, at its compress on the line of plaintiff's road in Columbus, two lots of cotton to be compressed and delivered to the plaintiff for shipment to Savannah. In compliance with the contract above set out, the defendant issued to the shippers two compress receipts of like form. Each of them (except as to the number of bales) in addition to numbers and marks, contained the following: "Received from Inman & Company 150 bales of cotton to be compressed and loaded for Seaboard. Sub-

ject to all the conditions of bill of lading of above-named carrier, which may be issued in exchange for this receipt." On the same day on which these receipts were given, the plaintiff issued to the shippers two bills of lading covering the cotton, by which the plaintiff contracted to carry it from Columbus to Savannah and deliver it to the steamship line. Copies of the bills of lading were attached as exhibits to the petition. Each of them contained on the back a printed statement that "No carrier or party in possession of all or any of the cotton herein described shall be liable for any loss thereof or damage thereto by causes beyond its control; or by floods or by fire," etc. When the shipments reached Savannah the plaintiff found that there were 67 bales less than the total specified in the compress receipts and in the bills of lading. It was informed by the defendant that the missing bales had been destroyed in a fire which consumed the compress on November 16. Knowing that the cotton was intended for export shipment, and realizing the great danger of loss and damage which might accrue by delay, the plaintiff requested the defendant to replace the cotton, which the latter refused to do. Thereupon the plaintiff went into the cotton market at Savannah and purchased from Inman & Company sixty-six bales having like marks and value as those destroyed, and delivered them, together with the bales which it had on hand, to the steamship line. This cotton cost the plaintiff $4,036.94, and the plaintiff sustained damage in that amount by reason of the non-delivery of the cotton to it by the defendant and its refusal to reimburse the plaintiff for the loss sustained.

On demurrer, the presiding judge dismissed the petition, and the plaintiff excepted.

*Brown & Randolph* and *R. S. Parker,* for plaintiff.

*King & Spalding* and *E. M. Underwood,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.) This case is practically controlled by the decision in *Atlantic Compress Co.* v. *Central of Georgia Ry. Co.,* 135 *Ga.* 140 (68 S. E. 1028). It was there held, that the giving of a receipt by the compress company to the owner of the cotton, containing a reference to the conditions of the bill of lading of the railroad company, and the substitution for such receipt of the bill of lading of the railroad company, in which there was a provision that "No carrier or party in posses-

27

sion of all or any part of the property herein described shall be liable for any loss thereof, or damage thereto, by . . fire," did not constitute an express contract between the owner of the cotton and the railway company, so as to exempt the latter from liability to the former for loss of the cotton by fire, under the provisions of the Civil Code of 1895, § 2276, that "A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and will then be governed thereby." It was further held, dealing with a like contract, that proof of the loss of the cotton by fire and payment to the owner by the railway company of the value of such cotton made a prima facie case of liability of the compress company to the railroad company on the indemnity contract.

The rule is recognized that the liability of the carrier does not begin until delivery of property to him or to his proper servant authorized to receive it for carriage. It has also been held, that, although physical delivery may have been made, if something required either by the law or the contract remains to be done by the shipper before transportation, the liability of the company may be that of a warehouseman rather than that of a carrier. There is some difference among the authorities as to what constitutes a delivery to the carrier or its authorized agent. Under the contract between the two companies, the mere statement that when a railroad company shall issue its bill of lading for compressed cotton to be delivered to it for shipment at the compress of the compress company, the latter company shall look to the shipper of such cotton for its charges, and not to the railroad company, was not sufficient to negative the fact of delivery to the carrier or its authorized agent, so as to prevent any liability from arising on the part of the carrier to the shipper.

The decision in the case of the Missouri Pacific Ry. Co. *v.* McFadden, 154 U. S. 155 (14 Sup. Ct. 990, 38 L. ed. 944), was cited. In that case an answer was filed by the defendant, alleging, among other things, that the railroad company, for its own convenience and the convenience of its customers, was in the habit of issuing bills of lading for cotton delivered to the compress company, to be compressed before actual delivery to the railroad company, with no intention on the part of the shipper or of

the carrier that the liability of the latter should attach before delivery on its cars; that this custom was well known to the plaintiff, who was the owner of the cotton, and the bills of lading were made out and accepted in accordance with such custom; that the cotton was in the hands of the compress company in accordance with such custom, and had never been delivered to the railroad company, and was under the control of the shipper or his agent, and had not been delivered to the defendant when destroyed by fire. The court sustained an objection to this plea. After verdict in favor of the plaintiff, the case was carried to the Supreme Court of the United States by writ of error. The judgment of the trial court was reversed. After discussing the fact that under the allegations of the plea the railroad company was not liable, Mr. Justice White said, in conclusion: "Of course, in so concluding, we proceed solely upon the admission which the exception to the answer necessarily imported, and express no opinion as to what would be the rule of law if the compress company had not been the agent of the shipper, or if the goods had been constructively delivered to the carrier through the compress company, who held them in the carrier's behalf." The transaction alleged in the present case, including the contract between the railroad and the compress company, the receipt given by the latter to the owner of the cotton, "to be compressed and loaded for Seaboard, subject to all the conditions of bill of lading of above-named carrier, which may be issued in exchange for this receipt," and the issuing of the bill of lading by the carrier, distinguishes this case from the one above cited, in the manner indicated by Mr. Justice White in the quotation made. Accepting the allegations of the petition as correct, as we must do on demurrer, it was error to dismiss the case.　　　　*Judgment reversed. All the Justices concur.*